WARD v. SEBRING. See Case No. 17,160.

WARD (SEBRING v.). See Case No. 12,598.

WARD (SPICER v.). See Case No. 13,241.

---

## Case No. 17,162.

### WARD v. THOMPSON.

### [Newb. 95.] [1]

### District Court, D. Michigan. 1856.

ADMIRALTY JURISDICTION — CONTRACT FOR RUNNING VESSEL—PARTNERSHIP—BAILMENT.

1. W. being owner of the steamboat Detroit, agreed with T. that he might run the boat during two sailing seasons. The boat was to be under the control of T. and he was to appoint all the officers and crew of the boat, except the clerk. The clerk was to be under the control of W. and to make reports to him of the receipts and expenditures of the boat. The receipts were to be applied, 1st, to the payment of the boat's expenses; 2d, to her insurance; 3d, to the payment of $6,000 to W., and the balance to be divided between W. and T. T. was to be allowed $300 per annum for his services as agent of the boat. Held, that although by this agreement the parties became partners after a certain event, in the profits of the business of the boat, they were not partners to such an extent as to oust the admiralty court of jurisdiction in a cause for the recovery of damages for a breach of the agreement.

[Cited in The Monte A., 12 Fed. 338.]

2. Where T. was to run the boat of W. for a fixed period, under a special agreement, by the terms of which the earnings of the boat were to be applied, 1st, to payment of the boat's expenses; 2d, her insurance; 3d, a given sum to W., the owner, and the balance to be divided between W. and T.—held, that until the expenses, insurance money and the given sum to be paid to W. were realized, T. was but the bailee or agent of W.

3. At any stage of a proceeding in admiralty, until final hearing, the question of jurisdiction is open.

---

[1] [Reported by John S. Newberry, Esq.]

This was a libel in personam, promoted by Eber B. Ward, as survivor of himself and Samuel Ward, deceased. The libel alleged that in the month of June, 1852, the libelant and said Samuel Ward, being the owners of the steamboat Detroit, chartered said boat to the respondent, [Charles] Thompson, for two years, and delivered her to the defendant in good order and condition; that by the terms of the charter agreement the respondent was to run the boat between Pentanguishine and other ports on the Georgian Bay, on the east shore of Lake Huron, and Sault Ste. Marie, Michigan, as a passage and freight boat; that the respondent was to employ good, careful and competent officers and men on board the boat, except the clerk, who was to be employed by the Wards; that the clerk was to receive all the earnings of the boat, and after paying her expenses, to remit the first net $6,000 to the libelant, and also one-half of all her earnings above that sum. The libel then alleges that the respondent did not use said boat as he had agreed to do; that he employed her as a "trading boat," in consequence whereof, the libelants sustained damage to the amount of $1,000; that he did not employ good, careful and competent men on board of the boat, but the contrary; and that by the carelessness and incompetency of the men so employed, the boat's engine was damaged $500, and the boat set on fire and damaged $1,500, and that the respondent neglected to pay the boat's earnings to the clerk, but used them for his own private purposes, and neglected to account for large sums of money received by him from the Canadian government, on account of the boat; to the libelant's damage $1,000. To recover these damages the libel was filed. The answer denied that the respondent ever chartered the steamboat, as alleged by the libelant, as also, all and singular the allegations of damages set forth in the libel; and averred, that by virtue of the agreement referred to by the libelant, the respondent had entered into a copartnership with the Wards, touching the employment of the boat for the two years therein mentioned. The agreement was annexed to the answer, and a full statement thereof, so far as essential to the purposes of this case, is contained in the opinion of the court. The answer further averred, that in a suit at law which the respondent had prosecuted against the libelant in the court of queen's bench in Upper Canada, based upon said agreement, the libelant had insisted, by way of defence, that said agreement constituted him a copartner with the respondent; that the defence thus set up by the libelant, was sustained by the court of queen's bench; and that judgment was thereupon entered accordingly, which judgment has never been reversed or set aside. The respondent therefore insisted that the libelant was estopped from denying the copartnership, and that this court has no jurisdiction of the matters in controversy, the same not being properly cognizable in admiralty courts, but

rather in the courts of common law and in equity. After the issue had thus been made up, a motion was made to dismiss the libel, on the question of jurisdiction raised by the answer. On the argument of this motion an exemplification of the record of the case in the court of queen's bench, referred to in the respondent's answer, together with a manuscript copy of the opinion of the court pronounced in the case, were presented and read. From these it appeared that the question of copartnership between the parties was not presented by the pleadings, and formed no part of the issue made in the case; but that upon a motion made by defendant's counsel to vacate the judgment, and grant a new trial in the cause, the agreement annexed to the respondent's answer in this suit was read, and it was insisted that this agreement constituted the parties copartners in the boat, and that inasmuch as the greater portion of the plaintiff's claim in that suit, was for earnings of the boat while employed under said agreement, the judgment which had been rendered was erroneous. Of the view taken by the Canadian court upon this motion, sufficient will be seen in the opinion of the court upon the question of jurisdiction raised in the present case.

Lothrop & Duffield, in support of the motion.

Towle, Hunt & Newberry, contra.

WILKINS, District Judge. A motion is made in this case to dismiss the libel for want of jurisdiction, on the ground that the article of agreement, for the breach of which the libelant seeks to recover damages, was a covenant of partnership.

The answer of the respondent sets forth the agreement, by which it appears, that the libelant and Samuel Ward, now deceased, were at the time of the execution of the agreement, the joint owners of the steamboat Detroit; and agreed "to allow the respondent to run the same between the Sault Ste. Marie and Pentanguishine, during the sailing seasons of 1852 and 1853—in a line with and under the control and management" of the respondent, who was authorized to appoint the officers and crew, with the exception of the clerk, who was placed under the control of the Wards, and was to make reports to them of the receipts and expenditures of the boat every two weeks. The receipts were to be applied, first, to the payment of all expenses for the crew, fuel, repairs and supplies; second, to the payment of the money advanced for insurance; third, to the payment of the sum of $6,000 to the Wards; and lastly, the sum remaining after these payments was to be equally divided between the parties to the contract: the respondent being allowed, out of the earnings of said boat, over and above the division last specified, the sum of "$300 per annum for his services as agent of the boat." Unquestionably this agreement constituted the Wards and the respondent partners in the profits of the business in which the

steamer was to be employed. Their interest in the profits or losses of the adventure was joint and of the same nature. But they were not joint owners of the boat, which was, by the express terms of the agreement, chartered to the respondent for the consideration of $6,000, which was to be paid to the Wards antecedent to any division of the profits. Until that sum was paid we think the partnership did not commence. This view accords with the opinion of Chief Justice Robinson, in the case of Thompson v. Ward, decided in the court of queen's bench of the province of Upper Canada. In that case, Thompson sought to recover from the Wards, freight and passage money earned by the Detroit "directly after she was chartered by the plaintiff" (Thompson), and to which the defendants (Wards) objected, setting forth this agreement. The court held, that Thompson could not recover this freight and passage money, because the Wards were entitled to it, not as partners, but as owners of the chartered vessel. Mr. Justice Robinson expressly saying, "that this money should go towards liquidating the $6,000, which would then accelerate the period when Thompson would be entitled to share with the Wards the earnings of the boat, and, in respect to all earned after that period, they would be partners." Such is the language of the opinion. Certainly, if this freight and passage money had been paid into the clerk's office by a third party, and Thompson could not recover it by suit against the clerk, the Wards could; and if so, the libelant can recover the same from Thompson as part of the consideration agreed to be paid for the charter of the boat. Until this money was realized by the Wards, to the extent specified by the third clause in the agreement, the fourth constituting them partners, could not operate, and until then, Thompson was but their bailee or agent.

With these views, the court deems it unnecessary to pass upon the proposition stated in the argument, that the construction of the agreement is res adjudicata. The records of the queen's bench, show that the question was not presented by the pleadings. It arose incidentally, on the statement of counsel, and a verdict was entered, with the understanding, that on the production of such an agreement as was stated, at a subsequent term, the verdict would be set aside, as to the amount for which credit was claimed. But, as on a careful consideration of the opinion of Chief Justice Robinson, I am not enabled to see wherein he pronounces the entire agreement between those parties a covenant of partnership, any further than as to the profits accruing subsequent to the payment of the $6,000, and concurring therein at present in such construction, it is unnecessary to announce any judgment of this court as to the estoppel of the proceeding here on the part of the libellant. In overruling the present motion I feel less reluctance than I should was this a final determination of the questions raised. The language employed by the contracting parties certainly rendered the instrument they executed somewhat equivocal. Their intention, though clear as to the "sharing of the earnings," upon a certain contingency, is somewhat obscure as to whether the writing should be considered as a charter party on specified stipulations, or as a covenant of co-partnership. My mind is not free from doubt; but as no injustice can arise from the further prosecution of the cause and entertaining jurisdiction, the objections raised will be held under reservation. At any stage of the proceeding, until final hearing, the question of jurisdiction is open; and if, on further and more full consideration of the able argument of the proctor of the respondent, and the cases cited by him, I should see ground to change the opinion now expressed, the proceedings will at once be dismissed. As at present advised I must refuse the motion. Motion denied.

[The cause was subsequently heard on the merits, and a decree entered dismissing the libel. An appeal was taken to the circuit court, where the decree of this court was affirmed. Case unreported. Subsequently the libelant appealed to the supreme court, where the decree of the circuit court was affirmed, with costs. 22 How. (63 U. S.) 330.]