SIMPSON, JR., v. ONE HUNDRED AND TEN STICKS OF HEWN TIMBER.

(*District Court, E. D. New York.* April 25, 1881.)

1. FREIGHT—TENDER OF CARGO—PREMATURE ACTION—COSTS—JUSTIFICATION OF SURETIES—SEARCHING TITLES.

In an action against cargo to recover freight, where the libel was filed before all the cargo had been landed, and the evidence showed that there was no ability to pay the freight and demurrage, and in fact no intention to pay the same on the part of the charterer:

*Held*, that the action was not prematurely brought, and the ship was entitled to a decree for the freight.

The case of 1,265 *Vitrified Pipes*, 14 Blatchf. 274, distinguished.

Upon taxation of costs, disbursements made by the libellant for searching titles of sureties offered on a stipulation, expenses of real estate brokers called in to appraise property, and notary's fees in taking depositions of sureties, allowed as proper items of a bill of costs, but not telegrams and postage to secure attendance of attor-

neys upon the examination of claimant's witnesses in Georgia, it appearing that a persistent attempt had been made to defraud the court, and obtain the discharge of the cargo from custody upon worthless security.

In Admiralty.

*Hill, Wing & Shoudy,* for libellant.

*H. F. Averill,* for claimants.

BENEDICT, D. J.  It is useless in this case to determine whether the ship-owner is entitled, under the charter-party, to any greater sum than the $4,750 named in the bill of lading as the amount of freight and demurrage, for the reason that the amount named in the bill of lading is greater than the proceeds of the property in the registry.

The only point requiring determination is whether the action must be dismissed as prematurely brought.  The libel was filed on the twenty-fourth day of May, 1880, and, as appears by the marshal's return, the lumber was seized by him on that day by virtue of process issued in this action. When the cargo was so seized the vessel was lying at a wharf designated by the charterers, and a portion of the cargo had been discharged upon that wharf.  The point made by the claimant is that in order to maintain the action the cargo must be shown to have been discharged from the vessel and a tender of it thereafter made upon payment of the amount due.  But, if such be conceded to be the general rule, it is not without exceptions.  Here an exception is created by the facts proved, which, taken together, show that the charterers had no money to pay either freight or demurrage, and their action was such as to warrant the ship-owner in concluding that a tender of the cargo would have been a vain formality.  There was in fact no readiness on the part of the charterers to pay either freight or demurrage, and the ship-owner had reason to suppose that there was no intention to pay either freight or demurrage.  Under the circumstances, therefore, the acts of the charterers must be deemed a waiver of any tender of the cargo, and the suit, which, it must be remembered, was in fact for demurrage to the amount of

$1,250 that was already due by the terms of the charter, and by the charter made a lien upon the cargo, must be held to be properly brought.

I do not see that the fact that another suit had been instituted by the ship-owner to recover his freight and demurrage, which suit was discontinued on the 24th, prior to the filing of the libel in this case, is of any importance. It appears that the cargo was not seized in the first suit until the vessel was at the berth designated by the charterer, ready to discharge the cargo, and when it was apparent that the charterer was unable to pay either freight or demurrage; and it is obvious that it was known to the charterers that the suit would be no obstacle to the delivery of the cargo, provided they were ready to pay or secure the amount due.

This case differs in a material point from the case of *1,265 Vitrified Pipes*, 14 Blatchf. 274, relied on by the claimants, because in that case there was what in this case there was not—a readiness and present ability to pay the freight. In that case it was plain that if the cargo had been tendered the freight would have been paid and the cargo received. Here it is plain that if the cargo had been tendered the freight would not have been paid; and the consignee was so informed by the acts of the parties done prior to the institution of this suit.

The libellant is entitled to be decreed to have a lien upon the cargo proceeded against for the sum of $4,750, with interest, and to an order applying the proceeds of the cargo in the registry to the payment of the amount.

———

Subsequently, on an appeal from the clerk's taxation of the bill of costs in the above action, the following opinion was rendered:

(May 13, 1881.)

BENEDICT, D. J. In this case the claimants applied for a delivery of the property proceeded against, upon a stipula-

tion for value, and tendered four sureties in succession. Each surety in the first instance justified as sufficient, but on examination proved to be worthless and was rejected. There was, in fact, a bold and persistent attempt on the part of the claimants to obtain possession of property in the custody of the court by substituting therefor a worthless stipulation. The examinations made necessary in order to defeat this attempt involved a very considerable outlay in the way of fees paid for searching for judgments and conveyances of real estate which the proposed sureties claimed to own; and the question is whether these expenses can be taxed in the costs.

In a case like this, where there was good ground to believe that a fraud upon the court was being attempted, I think the expenditure for searches was justified, and should be taxed as part of the costs. So, also, I think it proper to allow the $50 dollars paid real estate brokers to examine real estate claimed to be of value, but found to be of little value, in order to enable the court to be informed in respect thereto.

Expenses incurred under a lawful order of court may be taxed as part of the costs, and inserted as part of the judgment against the losing party, (*Neff* v. *Pennoyer*, 3 Sawy. 336,) and, upon the same principle, expenses made necessary in order to defeat an attempt to defraud the court may be taxed and allowed. Upon the presentation of the first surety, in view of what then appeared, the court, if applied to, would have in the first instance directed that searches be made, not only as against that surety, but also against any others that might subsequently be offered by these claimants.

The notary's expenses of taking the voluminous examinations of the several sureties may also be allowed. The expenses of telegraphing to attorneys in Georgia to attend at the examination of witnesses there are not allowed.