## THE NEREID.

### FLYNN et al. v. THE NEREID.

(District Court, D. Massachusetts. May 14, 1895.)

No. 669.

1. ADMIRALTY—SEAMEN'S WAGES—DESERTION OF VESSEL.

A fishing schooner put into a port for bait. After the bait was secured, and when the schooner was about to sail, D., one of the crew, asked leave to go ashore, which was given, with a caution to return promptly. Thereupon, D. and several others of the crew, pursuant to a preconcerted plan, left the vessel, and went ashore. After some time the master sounded a signal for them to return, to which they paid no attention. He then prepared to put the vessel under way, when one F., another of the crew, asked and was given leave to go after the men. He found them all more or less intoxicated, and some of them unable to go aboard without assistance, which he reported to the master, who signified his purpose to go to sea without them. F., then, supposing that the vessel would not go, went ashore again for the men, but before he could bring them on board the vessel sailed away without them. *Held*, that the members of the crew, other than F., for their disregard of the interests of the vessel, and insubordination, should be subjected to the damage resulting from their failure to perform proper and reasonable duty.

2. SAME—SEAMAN DESERTED BY VESSEL.

*Held*, further, that F., having acted in the interest of the vessel, should recover his share of the catch of the vessel, and for his loss of time and expenses, and the value of his outfit carried away.

This was a libel by William Flynn and others against the schooner Nereid for wages and damages.

William A. Pew, Jr., for libelants.

John J. Flaherty, for libelee.

ALDRICH, District Judge. This is a proceeding to recover wages and damages on behalf of certain seamen who shipped on the fishing schooner Nereid, on the half lay, for a salt trip to Grand Banks, in the deep-sea fisheries. The libelants claim that while the vessel was in the Bay of Holyrood, Newfoundland, for bait, they went ashore, with permission, and, while ashore, that the master of the vessel deserted them, and sailed away to sea, whereby they were put to expense for board and lodgings, and lost the benefit of their share in the catch, which they would otherwise have received. The schooner, with her crew of fishermen, left Gloucester on the 27th of April, 1894, and was engaged in fishing until about the 20th of August, when she put into Holyrood for bait. After the bait had been secured and iced, in the forenoon of August 23d, the schooner was ready for sea, and the seamen understood that the master desired to get under way without unnecessary delay. About 10 o'clock in the forenoon, William Daley, one of the libelants, asked permission to go ashore for some alleged necessary purpose. Permission was given, with proper caution, and instructions to return at once, as the vessel

must be made ready to sail, whereupon, and while the master was below, all the libelants, except Flynn, together with other members of the crew, left the vessel, and went ashore. I find that these men left in accordance with a preconcerted plan, which was unknown to the master at the time permission was given to Daley. After waiting an hour or two, the master sounded the proper signal for the men to return; and, as the vessel was only a short distance from the shore, the signal must have been heard and understood by the men, but they did not heed it. After waiting for some time, the master gave directions to the men on board to put the vessel under way, whereupon Flynn asked permission to go ashore, saying that he thought he could get the men. Permission was given. Flynn went ashore, and found the men all more or less intoxicated, two of whom were prostrated, and could not, with the assistance at hand, be taken aboard. Flynn, thereupon, with one or two of the men, returned to the vessel, and reported the facts to the master, who signified his purpose to proceed to sea without them, when Flynn, acting upon the supposition that the vessel would not go, and desiring to bring the men on board, suddenly left the vessel, with others to assist; and as the men were being brought to the shore the vessel was found under way, and the men, together with Flynn, were left. I think the evidence shows such want of regard, on the part of the men who left, for the interest of the vessel and the other members of the crew, and such acts of insubordination, as to demand that they should be subjected to the damage resulting from their failure to perform proper and reasonable duty. It is evident that the men were not intoxicated to such a degree, at the time the signal to return was given, that they could not have returned, if they had desired, and that they willfully prolonged their stay. Therefore, as to all the libelants except Flynn, while deducting nothing for expected future catch, but only such damages as directly and necessarily resulted from failure to perform duty, I find that they should recover $20 each, only.

As to Flynn, I take a different view. He was earnestly and faithfully acting in the interests of the vessel, the crew, and himself, trying to get the men on board, that the vessel might proceed fully equipped; and, as respects Flynn, the master did not act with discretion or fairness. After having given him permission to try, he should have treated his efforts with more tolerance and consideration. I think Flynn should recover his share in the catch, which I fix at $91.74; expenses getting from Holyrood to the Bay of Bulls, and while there, $15; loss of time while there, $10; and for outfit and clothing carried away, $50,—making, in all, $166.74. From this however, should be deducted the owner's book account and the captain's account, $50.31, leaving $116.43.

Lundigan, one of the libelants, has deceased since the commencement of this proceeding; and it is understood that recovery cannot be had, unless an administrator, duly appointed, comes in. Decree in accordance with the above findings, with interest from date of libel.