PACIFIC MAIL S. S. CO. v. IVERSON et al.

(Circuit Court of Appeals, Ninth Circuit.   May 6, 1907.)

No. 1,375.

1. SEAMEN—BREACH OF CONTRACT BY SHIPOWNER—DAMAGES.

Libelants shipped as seamen on board a steamship of respondent's for a voyage of nine months from San Francisco to Siberia and return.  The ship carried a contraband cargo, and was captured by the Japanese and taken with her crew to a Japanese port, where the crew were released prior to the expiration of their term of service.  Respondent furnished them tickets for steerage transportation to San Francisco on another of its vessels.  On reaching Honolulu libelants went on shore, and, because of a regulation of the Marine Hospital service, made because it was at the time an infected port, they were not allowed to return to the ship, and their effects were thrown upon the pier, where some of them were lost.  Libelants were left without money, and respondent's agent refused to assist them or pay them wages due.  After they had employed counsel to bring a suit, respondent offered to take them to San Francisco on another vessel, which offer they then refused.  It appeared that they left the ship without objection on the part of the officers and without knowledge of the port regulation.  Held that, while respondent was not liable for any delay in taking libelants to San Francisco, their term of service not having expired, it was responsible for their support in the meantime, and was liable for the loss and damage to them consequent upon its refusal to recognize such obligation and for the loss of their clothes.

2. ADMIRALTY—COSTS.

A court of admiralty has no power to allow costs other than those provided for by statute, unless for an expense incurred under its order, and, there being no statutory provision for the allowance of mileage to a proctor in attending on the taking of depositions, no such allowance can be taxed as costs.

Appeal from the District Court of the United States for the Territory of Hawaii.

In August, 1905, a crew was shipped on the appellant's steamship Barracuda at San Francisco for a voyage of nine months to Siberia and return.  The Barracuda carried salt, a contraband of war, and was captured by the Japanese and taken with her crew to a Japanese port.  The crew were subsequently released in the city of Yokohama.  There they were furnished by the captain of the Barracuda with steerage transportation from that port to San Francisco on the Mongolia, another of the appellant's steamships.  On October 18, 1905, some 35 of the members of the crew, including the appellees herein, were received on board the Mongolia, and two days later there was issued to each of them a steerage check or ticket in form as follows:

"(2–1–05–3M)                                                        S. G. 63.

"Pacific Mail Steamship Co.
"Steerage Check.
"Steamer:  Mongolia.   Voy. 7.
"Name:  A. Iverson.
"From Yokohama to San Francisco.
"No. Ticket:  9104.
                                                   "A. E. Rennie, Purser.
"Good for this trip only.   To be shown and returned when called for."

The Mongolia arrived at Honolulu on October 27, 1905.  At that date, Honolulu was an infected port, and under a promulgated regulation of the United States Marine Hospital service, through steerage passengers on ships destined for ports on the Pacific Coast of the United States were not allowed to come ashore, and, if they did come ashore, were not allowed to return to the ship.

Of the men of the Barracuda's crew, seven, including the appellees, went ashore. They were refused permission to return on board, their effects were thrown upon the dock, whereby some of their clothing was lost, and on October 28, 1905, the Mongolia departed for San Francisco. Libels were filed by six of these men, alleging a breach of the contract of carriage of the Mongolia from Yokohama to San Francisco. The defense was, first, that under the circumstances, and in view of the relation existing between the appellant and the appellees, a voluntary quitting of the vessel by the latter released the former of its obligation to give them a continuous passage to San Francisco on the Mongolia, and that its subsequent offer to carry them by its next steamer absolved it from all claim of damages; and, second, that, if there were a contract for a continuous carriage on the Mongolia from Yokohama to San Francisco, the appellant was released therefrom by reason of the voluntary violation by the appellees of the regulations of the Marine Hospital service. The causes were combined in the court below, and upon the evidence the court found for the appellees and awarded each thereof damages in the sum of $150.

E. B. McClanahan, Knight & Heggerty, and Kinney, McClanahan & Derby, for appellant.

Geo. A. Davis, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant contends that the decision of the court below is against the evidence in the case and contrary to law and equity. The appellees had shipped on the Barracuda for a nine months' voyage. That voyage having been interrupted by the confiscation of their ship, they were entitled to be returned to San Francisco at the cost of the appellant. The appellant, recognizing this liability, furnished them transportation from Yokohama to San Francisco on another of its ships, the Mongolia. In view of the fact that the term for which the appellees had shipped had not expired, and would not expire for several months, the appellant was under no obligation to carry them back to San Francisco by the Mongolia or by any particular ship or by a continuous voyage. It would have been no breach of its obligation if, on the arrival of the Mongolia at Honolulu, the appellant had required the appellees to go ashore and remain there until its next ship sailed from that port, provided that it made arrangements for their board and lodging and other necessary expenses in Honolulu while so waiting. The evidence is conflicting as to the circumstances under which the appellees went ashore at Honolulu. There is testimony on behalf of the appellant that they were notified of the Marine Hospital service regulation and were forbidden to go ashore. On the other hand, each of the appellees testified that he neither heard nor knew of any such regulation or interdiction. The trial court gave careful consideration to the evidence on this branch of the case, and reached the conclusion that the facts were as stated by the appellees. Upon an examination of the evidence, which we have made in view of the fact that the testimony was taken before a commissioner, and not in open court, we find no ground to disturb the finding of the court below.

It being established, then, that the appellees left the ship without objection on the part of the appellant or notice of the Marine Hospital service regulation, the question arises whether there was a breach of

contract on the part of the appellant in refusing them permission to re-enter the ship and in leaving them in Honolulu without money and without making provision for their maintenance. The evidence shows that the appellees on October 27th, after they had been refused permission to re-enter the ship, presented themselves and offered to be fumigated in accordance with the Marine Hospital service regulations, and again presented themselves at a later hour of the same day and again on the following morning for the same purpose, and did everything in their power to comply with the regulations so as to be entitled to be received on board. After the departure of the Mongolia on October 28th, the appellees called on the agent of the appellant at Honolulu to ascertain what the appellant would do for them, and were refused assistance. One of them applied for a payment on account of wages due him, which was also refused. They had no money or other resources. The night of October 27th they were without a place to sleep and without provisions. On the following night arrangements were made with Chillingworth whereby, upon his order, they obtained board and lodging at the Sailors' Home. They had incurred an expense to Chillingworth of $142 at the time of giving their evidence. About October 30th, and after the appellees had entered into an arrangement with their counsel to libel the ship for damages, the appellant's agent at Honolulu told them that they would be sent to San Francisco on the China, and that their expenses at the Sailors' Home would be paid by the appellant. The offer was refused by the appellees for the reason that they had assumed obligations for legal advice. In view of all these circumstances, we are not prepared to say that there was error in the decree of the trial court. The appellants should be held responsible for the privation suffered by the appellees during the time when they were without food or lodging, and for the loss of a portion of their clothing, together with the expense which they incurred for counsel before responsibility for their support was admitted or any offer was made to take them on to San Francisco upon the next ship. For all these items we cannot say that the sum allowed each appellee by the court below was excessive.

On the taxation of the costs in the court below, the clerk allowed $205 for mileage and expenses of the proctor for the appellees in going from Honolulu to San Francisco to attend there upon the taking of depositions for the appellant. On appeal to the court, the allowance of this item was affirmed. That ruling is assigned as error. While costs in admiralty are within the discretion of the court and may be allowed or denied on equitable considerations, the amounts and items of the costs allowable are not within the court's discretion but are fixed by statute. The court has no power to allow costs other than the statutory costs, except in cases where expense has been incurred in the conduct of the case, under the order of the court. Jacobsen v. Lewis Klondike Expedition Co., 112 Fed. 73, 50 C. C. A. 121; Simpson v. 110 Sticks of Hewn Timber (D. C.) 7 Fed. 243; Dennis v. Eddy, 12 Blatchf. 195, Fed. Cas. No. 3,793. As there is no statutory provision for the allowance of mileage as taxed in the court below, the decree is as to that item reversed. In other respects the decree is affirmed, with costs to the appellees.