### THE WASHINGTON (two cases).

(District Court, E. D. New York.   January 8, 1924.)

1. **Courts** ⊚⟹37(2)—**Question of jurisdiction may be raised at any time.**
    The question of the jurisdiction of the court may be raised at any time.

2. **Seamen** ⊚⟹27—**Lien for wages not suspended, where bankruptcy receiver continued voyage.**
    Where a bankruptcy receiver continued the voyage, and the seamen performed their usual duties, their services were maritime, and their lien for wages was not suspended.

3. **Maritime liens** ⊚⟹6, 8—**Receiver, who operated bankrupt's vessel as owner, held to have no lien for advances.**
    Where a bankruptcy receiver claimed bankrupt's vessel as owner, she had no lien for advances made by her in operating the vessel in an at-

---

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tempt to make a profit for the estate, and which were not made on the credit of the vessel.

4. Bankruptcy ⊚⇒18½—Admiralty court does not fix or allow commissions in bankruptcy.

The District Court sitting in admiralty does not fix or allow commissions in bankruptcy, especially to a receiver appointed in another district, who was never appointed ancillary receiver in the court in which the admiralty proceeding was pending.

5. Maritime liens ⊚⇒9—Commissions in bankruptcy not maritime lien on bankrupt's ship.

Commissions in bankruptcy are not a maritime lien on bankrupt's ship.

6. Admiralty ⊚⇒101—Vacation of order of distribution in proceedings to libel vessel, as not properly entered, refused.

An order of distribution, made in proceedings to libel a vessel for wages, will not be vacated, as not properly entered, where libel was regularly filed process properly issued and subsequent proceedings, including the proposed final decree were duly presented on notice to all parties entitled thereto, and where no one appeared to oppose the entry of the decree determining the amounts due.

7. Seamen ⊚⇒31—Canteenman held to have maritime lien for lost equipment prior to lien for supplies furnished.

A canteenman on a vessel, whose equipment and belongings were lost when the vessel was libeled and sold, has a maritime lien for the loss, on an equal basis with a wage lien and prior to any liens for supplies furnished.

8. Seamen ⊚⇒13, 16—Wages, subsistence, and return passage of abandoned seamen held properly allowed on libel of vessel.

On libel of vessel for wages after the appointment of a receiver in bankruptcy, wages, subsistence, and return passage of seamen who were abandoned were properly allowed.

9. Admiralty ⊚⇒25—Bankruptcy receiver, who failed to assert title to vessel seized under process, held estopped to question admiralty court's jurisdiction.

A bankruptcy receiver who failed to assert title to bankrupt's vessel, and did not move to compel the marshal to turn it over to her after it had been seized under an admiralty process on libel for seamen's wages in another district, and who consented to such admiralty proceedings in writing, was estopped from questioning the jurisdiction of the admiralty court.

In Admiralty. Libels by Demosthenes Helmis and others and by the Stone & Downer Company against the steamship Washington. Decrees for libelants.

George A. Voss, of New York City (Alton W. Teale, of Clifton, N. J., of counsel), for libelant James Auditore & Co., Inc.

Walter B. Hall, of New York City, for libelants Helmis and others.

Foley & Martin, of New York City, for libelants Harbor Steam Hoisting Co., Inc., and others.

Bertha Rembaugh, of New York City, for receiver of Booras Bros., Inc.

Rumsey & Morgan, of New York City (John Tilney Carpenter, of New York City, of counsel), for libelant Stone & Downer Co.

Bigham, Englar & Jones, of New York City (James W. Ryan, of New York City, of counsel), for supply libelants Hallin and De Matteis.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GARVIN, District Judge. On September 7, 1923, a libel was filed in this court by Demosthenes Helmis and others against the steamship Washington, her engines, boilers, etc., and against her freights, in a maritime action for wages. Bertha Rembaugh, who had been appointed receiver in bankruptcy of Booras Bros., Inc., by the United States District Court for the Southern District of New York on July 18, 1923, filed an answer on September 19, 1923, by permission of this court, intervening in behalf and for the interests of the general creditors and the estate in bankruptcy of said Booras Bros., Inc. The answer alleged that by virtue of orders of the United States District Court for the Southern District of New York respondent took possession of said steamship Washington and operated her on a voyage from Constantinople to New York. The answer further alleged that the respondent had no knowledge or information sufficient to form a belief as to the allegations of the libel which set forth an alleged cause of action for damages against the steamship Washington, leaving the allegations with respect to the same to be proved by libelants, and alleged that, when the steamship arrived at the port of New York, the respondent, for the benefit and protection of the general creditors, the estate of Booras Bros., Inc., the maritime lienors and creditors herein, including libelant, incurred expenses in connection with the unloading and care of the vessel which amounted to more than $4,000. At the same time said Bertha Rembaugh filed a claim alleging that she was the true and bona fide receiver of the owner of the ship. On September 19, 1923, Abraham Kalinoglou and others filed an intervening petition and libel, asserting various alleged maritime liens claimed to be prior to any and all other claims and liens against the steamship.

On September 21, 1923, an order was made by this court, on consent of said Bertha Rembaugh, as receiver aforesaid, appointing a commissioner to ascertain and compute the amount due the libelants herein for the causes set forth in the libel and intervening libel and report thereon to the court. On September 28, 1923, the commissioner filed his report. Meanwhile, and on September 26, the libelants had moved for an immediate sale of the vessel, and their motion had been granted. On October 5, 1923, a decree was entered confirming the commissioner's report, which decree was signed on notice to the parties who had appeared and who did not oppose. On October 17, 1923, the libelants moved for an order directing distribution of the proceeds of the sale of the vessel, which sale had been duly held as directed by this court. This application was referred by the court to the commissioner aforesaid. The commissioner presented his report, dated October 19, 1923, recommending immediate payment to the libelants, which report was confirmed by order of this court dated October 19, and filed October 23, 1923.

On October 27, 1923, an order was made by this court permitting Alfrendo Malino, a fireman on the Washington, asserting a claim for wages, to intervene, and referring his claim to said commissioner. On November 2, 1923, a hearing was held before the court on consent of the various parties, a question of the jurisdiction of the commissioner to proceed further in matters pending before him having been raised and referred by him to the court.

Argument was had, and all the various matters in controversy were then submitted by the parties, on consent, for determination. The said receiver in bankruptcy of Booras Bros., Inc., had filed a libel for her claim of $4,000 for expenses incurred as hereinbefore stated. On November 2, at the hearing, Octave A. De Matteis and one John L. Hallin, trading under the firm name and style of the Tri-State Fuel Company, libelants and maritime lienors (who also filed libels which had been referred to the said commissioner), filed 12 exceptions and 4 exceptive allegations to the receiver's libel upon the following grounds:

"(1) The libel does not state facts sufficient to entitle the libelant to a maritime lien against the said steamship.

"(2) The libel shows on its face that the only remedy, if any, of the libelant, is by a petition pro interesse suo (under rule 42 of the Admiralty Rules promulgated by the Supreme Court of the United States) against the remnants of the proceeds of the sale of the steamship Washington after payment of all maritime liens.

"(3) The libel is filed by the claimant of the steamship against her own property and herself.

"(4) The libel does not state facts sufficient to entitle the libelant to file a libel as receiver of the owner or operator of the steamship, because it does not allege that the libelant has been appointed by the above-entitled court as ancillary receiver.

"(5) The libel does not allege facts sufficient to show that this court has jurisdiction of the subject-matter of the libelant's claim.

"(6) The libel shows on its face that the recovery sought is the satisfaction of unpaid obligations incurred by the receiver in operating the steamship Washington, for the purpose of earning a profit for the bankrupt estate of Booras Bros., Inc., and of the nonmaritime creditors.

"(7) The libel does not allege that any consideration was ever paid by the libelant for the assignment of the claims therein set forth.

"(8) The libel does not allege facts sufficient to show a maritime lien, because it is based on the assumption that a shipowner, by paying one of his debts and taking an assignment of said debt, is entitled to a preferred status ahead of all his creditors in a suit in rem against his own vessel by maritime lienors and creditors who are secured by and have advanced money on the credit of said vessel.

"(9) The libel is ambiguous, unintelligible, and uncertain.

"(10) None of the items or causes of action set forth in said libel would constitute a maritime lien against the steamship Washington or her proceeds under any circumstances.

"(11) The items or causes of action set forth in said libel, even if they constituted liens against the steamship Washington or her proceeds in court, do not constitute liens in favor of the Receiver-libelant claimant.

"(12) At the time said order of distribution was entered, there was pending and undetermined by this court the question of its jurisdiction of the subject-matter on the ground that the proofs of the libelants failed to show facts sufficient to entitle them to maritime liens for services rendered or merchant property lost after the 3d day of August, 1923. This question had been properly and clearly raised on the record of the court by formal exceptions.

"And said Octave A. De Matteis and John L. Hallin, libelants as aforesaid, hereby in the form of exceptive allegations, allege as follows:

"(13) The libelant Bertha Rembaugh has at no time operated said steamship Washington other than for the purpose of making a profit for the sole benefit of the nonmaritime creditors of the bankrupt estate of Booras Bros., Inc., and was not authorized by the United States District Court for the Southern District of New York to operate said steamship for any other purpose.

"(14) The libelant Bertha Rembaugh at no time was authorized to operate the steamship Washington for the benefit directly or indirectly of the libelants Octave A. De Matteis or John L. Hallin.

"(15) The libelant Bertha Rembaugh is not the assignee for valuable consideration of the claims set forth in her libel.

"(16) This court is without jurisdiction of the subject-matter of said libel, because the steamship Washington was not arrested or attached by the United States marshal for this district under said libel before the sale of said vessel by order of this court under other libels; nor has said marshal filed with the clerk of this court any return showing that said vessel was arrested or attached by him under the libel of said Bertha Rembaugh. On the contrary, the return of the marshal on process issued under said libel shows that he did nothing toward executing said process, other than sending a notice of the filing of the libel and of the issuance of process to Bertha Rembaugh, claimant and owner of said steamship Washington. The interlocutory decree, entered ex parte on said libel of said Bertha Rembaugh, admits in its opening paragraph that the said steamship Washington was only attached under the libel filed in cause No. 5654, entitled 'James Auditore & Co. against the Steamship Washington.' "

In the Hallin action said receiver appeared as claimant to the vessel and filed an answer. On November 2d De Matteis and Hallin also moved that the order confirming the commissioner's report recommending distribution, and the order of distribution be vacated and set aside, on the ground that this court was without jurisdiction of the subject-matter of the claims and wages included in said decree and order of distribution for the following reasons:

"(1) Since the entry of said final decree and before any order of distribution was entered thereon, uncontradicted evidence was introduced before the commissioner duly appointed by this court, showing that none of the libelants named in said final decree has ever had a maritime lien against the steamship Washington for services (compensation for which, as commercial seamen, is included in said final decree) rendered after the 3d day of August, 1923, or has since said 3d day of August, 1923, rendered any services as a seaman or otherwise than as an employee of a receiver for a court other than the above-entitled court, of a vessel which was in custodia legis, and was only being preserved or maintained for public and noncommercial purposes. No valid or proper order of distribution has ever been entered on said final decree, in accordance with rule 53 of the Admiralty Rules of this court or otherwise. No motion has yet been made or order entered for the marshaling and ranking by this court of the various maritime and nonmaritime libels or claims.

"(2) Said final decree and said order of distribution include not only wages of alleged seamen, but also several thousand dollars in favor of a merchant named T. Chappas, as the value of canteen property which is alleged to have been at some time on board said steamship Washington for the purpose of ultimate sale, which is not alleged to have been lost, destroyed, or damaged, and which is not alleged to be personal wearing apparel or effects of seamen, or cargo or other property, the loss or damage of which on board said vessel might entitle the owner to a maritime lien.

"(3) Said final decree was entered on the report of a commissioner, which was based almost wholly, not on proofs submitted, but on a stipulation signed by a receiver in bankruptcy of another court who has never been authorized to act as an officer of this court or to represent any of the maritime lienors of the steamship Washington.

"(4) Said final decree and order of distribution include not only wages to seamen, but also wages and compensation to former seamen or employees for the period of more than a month after said seamen finally left the said vessel at Piræus, and in addition subsistence and lodging at an obviously exorbitant rate while ashore in Greece, and also passage fare from Greece to the United States, not as seamen, but as passengers; the said seamen at all of said times and now being citizens and residents of Greece.

"(5) At the time said order confirming the commissioner's report on the reference of the motion for distribution, and at the time said order of distri-

bution was entered, there were pending in this cause and undetermined by this court exceptions to its jurisdiction and to the sufficiency of the proofs to establish the libelants' alleged maritime liens for services rendered and merchant property lost after the 3d day of August, 1923. On neither of said questions have the libelants Hallin or De Matteis ever had an opportunity to be heard by this court, notwithstanding their proctors stated in open court and later before the commissioner their opposition to said proposed distribution.

"(6) Said order of distribution was entered ex parte in violation of admiralty rule 53 of this court and without notice ever having been served on the libelants Hallin or De Matteis that the commissioner's report on distribution had been filed or confirmed."

At the same time De Matteis and Hallin moved that an interlocutory decree entered October 24, 1923, in favor of libelant Bertha Rembaugh be vacated and set aside, on the ground that it was entered ex parte, without notice to either of them, and they further moved to vacate and set aside an order to show cause entered ex parte on October 8, 1923, on the affidavit of Bertha Rembaugh, claimant and owner of the steamship Washington, and an order entered on the 10th day of October, 1923, referring said order to show cause to a commissioner, and to strike from the files the affidavit of said receiver claimant, Bertha Rembaugh, filed therewith, on the following grounds:

"(1) This court is without jurisdiction to grant the relief sought by the receiver claimant, Bertha Rembaugh, in said order to show cause, because the facts alleged in said order and in the affidavit of the receiver claimant Bertha Rembaugh in support of said order, are insufficient to entitle said receiver claimant to a maritime lien, or to salvage compensation, or to recovery as an officer or marshal of this court protecting or preserving the steamship Washington after seizure by this court.

"(2) The court was without jurisdiction to enter such order on the application of the said claimant and owner of the steamer, because the recovery sought by said order to show cause is in the nature of a libel by the claimant against herself and her own vessel.

"(3) The entry of said order and the reference by this court of hearings thereunder to a commissioner without giving the libelants, John L. Hallin and Octave A. De Matteis an opportunity to be heard on the questions of law and jurisdiction involved, will cause unnecessary expense and hardship for stenographers' fees and commissioner's fees and otherwise to said libelants.

"(4) The attempt by this order to show cause to marshal and rank the claimant receiver's lien, if any, before the other maritime and nonmaritime claims have been marshaled and ranked, is premature.

"(5) The said order to show cause, although directed to the libelants Hallin and De Matteis, among others, has not been entered in cause No. 5665, entitled 'John L. Hallin, etc., against the Steamship Washington,' or in cause No. 5655, entitled 'Octave A. De Matteis against the Steamship Washington,' which are pending in this court against the proceeds of sale which the said receiver claimant asks by this order to show cause to have distributed immediately to herself.

"(6) Said order to show cause was improvidently and improperly entered. The relief which said receiver claimant seeks may, if she is legally entitled to it, be obtained under the claim which she has filed as owner of said steamship in causes Nos. 5665 and 5655 hereinabove referred to, or under the libel which she has filed against said steamship and herself as claimant in cause No. 5736 now pending in this court.

"(7) The attempted recovery of the proceeds of the sale of said vessel by said receiver claimant by a mere affidavit in support of an order to show cause ahead of and to the serious prejudice of the libelants and maritime lienors Hallin and De Matteis is not authorized by any statute, rule, or practice on the admiralty side of this court.

"(8) The affidavit of said receiver claimant in support of said order to show cause shows on its face that said receiver claimant is merely a receiver in bankruptcy of a court of another district and authorized to sue and be sued in said other district, and that she has never been appointed an ancillary receiver for the Eastern district of New York or otherwise authorized or empowered to sue as a receiver in said Eastern district of New York.

"(9) The questions raised by said order to show cause and the affidavit of said receiver claimant filed in support of it are moot, because a final decree and improvident order of distribution have been entered in the case No. 5663, entitled 'Demosthenes Helmis against the Steamship Washington,' in which alone said order has been entitled and entered.

"(10) This court and the commissioner appointed by it are without jurisdiction further to consider or entertain said order to show cause in cause No. 5663, entitled 'Demosthenes Helmis et al. against Steamship Washington,' because since the entry of said order to show cause this court has improvidently entered an order of distribution and from said order of distribution appeals have been taken by James Auditore & Co., libelant in cause No. 5654, and by Anna Rondas, libelant in cause No. 5639, to the United States Circuit Court of Appeals for the Second Circuit."

The order above referred to as having been entered October. 10, 1923, is apparently an order dated October 29, and filed October 30, 1923.

On November 12, 1923, Stone & Downer Company, who had filed a libel against the boat on September 8, 1923, for work, labor, and services, and advances, filed exceptions to a petition of said receiver in bankruptcy, verified October 8, 1923 (apparently the correct date of verification is September 29, 1923), which had been presented to the court, and upon which an order had been made, dated October 1, 1923, permitting the said receiver to file a libel against said boat for moneys advanced. These exceptions, seven in number, are as follows:

"(1) The petition does not state facts sufficient to constitute a claim against the steamship Washington or the proceeds of the sale thereof.

"(2) The petition fails to show that the receiver is entitled to a preference over maritime lien claimants.

"(3) The petition fails to show that the petitioner is entitled to any maritime lien whatsoever.

"(4) The petition fails to show that the general estate in bankruptcy of Booras Bros., Inc., is insufficient to pay the receiver's operating expenses.

"(5) The petition fails to show that the receiver for Booras Bros., Inc., took possession of the steamship Washington, but, on the contrary shows that the United States marshal for the Eastern district of New York had possession thereof.

"(6) The petition shows that the expenditures alleged by petitioner were not made upon the credit of the ship.

"(7) The petition shows that the petitioner is not receiver in bankruptcy of the owner of the steamship Washington."

Other libels have been filed by James Auditore & Co., Inc., and by Anna T. Rondas. Auditore & Co. excepts to the report of the commissioner filed October 18, 1923 (apparently this should read "dated October 19, 1923"), on the following grounds:

"First. Said libelant excepts to the ruling in paragraph second of said report, in that no mention is made of the appearance of Bertha Rembaugh, receiver in bankruptcy for Booras Bros., at the hearing on October 18, 1923.

"Second. The said libelant excepts to the rulings and findings by the commissioner contained in paragraph fourth of said report, to the effect that the libelants in this proceeding are entitled to a maritime lien and are entitled to priority over any other maritime lienors against the steamship Washington.

"Third. The said libelant excepts to the rulings and findings contained in paragraph fifth of the said report wherein it is alleged that no motion has been made to open or alter the provisions of the final decree therein referred to dated October 5, 1923, and further wherein it is alleged that no person has appeared, filed, claimed, answered, or intervened in the application of the libelants Helmis et al. in their application for an order for immediate distribution.

"Fourth. The said libelant excepts to the rulings and findings contained in paragraph sixth of said report, wherein it is alleged that no suggestion has been made that the members of the crew had no notice of the bankruptcy proceedings of Booras Bros., Inc.

"Fifth. The said libelant excepts to each and every ruling and finding contained in paragraph eighth of the said report.

"Sixth. Said libelant excepts to each and every ruling and finding contained in paragraph ninth of said report.

"Seventh. Said libelant excepts to each and every alleged ruling and finding contained in paragraph tenth of said report.

"Eighth. Said libelant excepts to each and every ruling and finding contained in paragraph eleventh of said report.

"Ninth. Said libelant excepts to each and every ruling and finding contained in paragraph thirteenth of said report."

On the hearing held November 2d, a motion to consolidate all the actions affecting the Washington was offered, and, there being no opposition, it was granted. It was stated on the argument that since that hearing a decree has been made directing payment to four seamen who had not originally filed libels against the ship. These libels and all other libels against the ship will likewise be consolidated as above directed, and the rights of the libelants therein will be hereinafter determined.

More complications and greater confusion are not often found. The court will endeavor to determine the matters in dispute without extended discussion. The carefully prepared briefs of the various counsel appearing have been of substantial assistance. What actually necessitated the hearing before the court of November 2d was the action of the commissioner in referring to the court a question of jurisdiction raised before him; several of the parties having questioned his authority to proceed. Whatever may be the merits of the objection, all parties now desire the court to pass upon their respective rights.

[1, 2] It is true, as claimed by counsel for Auditore & Co., that the question of jurisdiction may be raised at any time. The John C. Sweeney (D. C.) 55 Fed. 540; Ward v. Thompson, 29 Fed. Cas. 208, No. 17,-162. It is claimed that the seamen are not entitled to a maritime lien for wages after the receiver took over the management. The authorities cited are not in point. We have here the case of a vessel actually making a voyage of some thousands of miles from Constantinople to New York. The operation by the receiver in bankruptcy, if such operation it was, cannot serve to alter the fact that the seamen's services were maritime in character. Their alleged lien is sustained. The voyage of the ship was not broken up and abandoned as in The Esteban de Antunano (C. C.) 31 Fed. 920; on the contrary, it continued, with the seamen performing their usual duties. Where a receiver in bankruptcy operates a vessel and employs a crew, no reason, on principle, suggests itself why the maritime law with respect to liens for wages should be suspended. No authorities to that effect have been brought

to my attention. Indeed, rather to the contrary is The Resolute, 168 U. S. 437, 18 Sup. Ct. 112, 42 L. Ed. 533.

[3] The receiver has on several occasions claimed the vessel as owner. That would seem to be her logical status. As owner she has no claim for advances. Citation of authority is not deemed necessary. The receiver claims that the advances were made for the benefit of the admiralty lienors, and that therefore she has a lien for such advances. But they were not made on the credit of the vessel which is essential. What actually happened was an attempt by the receiver, commendable in itself and evidencing great enterprise and zeal, to make a profit for her estate. Her attempt failed, without any suggestion of fault on her part, and the estate of which she is receiver is responsible for the expenditures.

[4, 5] The receiver in bankruptcy is not entitled to be awarded commissions from the sale of the vessel in this proceeding. The court sitting in admiralty does not fix nor allow commissions in bankruptcy, and certainly not to a receiver appointed in another district who has never been appointed ancillary receiver here. Such commissions, in any event, are not a maritime lien on the ship, and will not be allowed and ordered paid by this court. See The Wabash (D. C. of Conn., June 21, 1923) 296 Fed. 559.

[6] The order of distribution in the original action of Helmis v. The Washington will not be vacated as not properly entered. On the contrary, it appears that the libel in that action was regularly filed and process properly issued, a claim filed and an answer, which did not seriously question the validity of libelants' lien. A commissioner was appointed, hearings on notice to all parties entitled to the same were held, and the commissioner took proof and made his report. Notice of the filing thereof was given all parties. No exceptions were filed for more than six weeks. A proposed final decree was presented to the court on notice to all parties. No one appeared to oppose the entry of the decree determining the amounts due, and it was signed. That proposed decree contained a provision for immediate distribution which could not be included, as the proceeds of the sale of the ship had not yet been deposited with the court.

[7] One of the libelants, Taimis Chapas, was allowed his claim. The court understands that no objection is now made thereto on the ground that he was not on the ship's articles. His name appears there. The commissioner has found that Chapas has a lien (prior to any lien for supplies furnished) for goods belonging to him which were lost. The ship was libeled, he demanded his goods, they could not be or were not found, and he has been damaged in an amount equal to their value. They may have been sold with the ship. At any rate, they belonged to Chapas, were lawfully aboard the boat, have disappeared without fault on his part, and under circumstances which amount to a tort. This may be fairly said to come within the authority of The Escanaba, 96 Fed. 252, which held that shippers of goods lost by reason of the tort of the master have a lien prior to liens for supplies furnished prior to the happening of the tort. Furthermore, the proof showed that he was a canteenman. The amount awarded for loss of equipment and the like was warranted by the proof. Under the authorities, he was prop-

erly allowed a maritime lien for the loss thereof. Such lien is on an equal basis with a wage lien, on the same theory that a seaman is entitled to have his personal property preserved and to an allowance therefor when it is lost. The Nereid (D. C.) 67 Fed. 602; Pacific Mail S. S. Co. v. Iverson, 154 Fed. 450, 83 C. C. A. 306. The precise point involved appears to be novel, but in view of the recognized status of the canteenman, of his necessity, of the peculiar character of his position, of the nature and extent of his equipment, an absolute essential in order that he may properly function, it would seem that he should be protected against loss, as is any other member of the crew protected against loss of his belongings, by his right to lien as for wages.

[8] Wages of seamen who were abandoned were properly allowed, as was subsistence and return passage. See Schermacher et al. v. Yates et al. (D. C.) 57 Fed. 668; The Hudson (D. C.) 8 Fed. 167.

[9] The receiver questions the jurisdiction of the admiralty court in the Helmis action, in this district. The vessel was seized in this district under the admiralty process. If the receiver had desired to claim title to the ship when it arrived at New York, after seizure under the libel, she should have at once asserted her rights as defined by the cases of Lazarus, Michel & Lazarus v. Prentice, Receiver of Musica, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305, and Robertson v. Howard, 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174, and moved to compel the marshal to turn over the vessel. She did not do so, but acquiesced in and approved of the procedure by actual consent in writing. She is now estopped from questioning its validity. All the other libels for wages or other claims alleged to have been recently filed and not heretofore determined will be referred to the commissioner to hear and report. It should be noted that the report of the commissioner dated September 28, 1923, recommended penalties in the nature of allowances for each seaman of double pay, from and after September 7, 1923, which date was fixed as being not less than four days after discharge of the cargo; the wages due being then unpaid. The report provided that the penalties should be due after payment of the claims of all other libelants, and provision for penalties was stricken out of the final decree.

An attempt has been made to dispose of all matters submitted, raised by the various exceptions and motions. If, through inadvertence, a question has not been determined, any party may bring the same to the attention of the court, whereupon a supplemental memorandum will be filed.