**ADMIRAL CRUISE SERVICES, INC., et al., Plaintiffs,**

v.

**M/V ST. TROPEZ, her engines, tackle and appurtenances, in rem, et al., Defendants.**

**No. 05–60024–CIV.**

United States District Court, S.D. Florida, Miami Division.

Dec. 6, 2007.

Raul Julio Chacon, Jr., Miami, FL, William Barry Milliken, Hayden & Milliken, Coral Gables, FL, for Plaintiffs.

### ORDER GRANTING SUMMARY JUDGMENT ON LIABILITY

ADALBERTO JORDAN, District Judge.

Admiral has filed a motion for summary judgment on the crew members' claims for unpaid tips. For the reasons stated below, Admiral's motion [D.E. 332] is DENIED and summary judgment is entered in favor of the crew members on liability.[1]

### I. Background

This action was filed by Admiral on January 6, 2005 seeking a maritime lien in the amount of $1,631,598.35 against the vessel St. Tropez. Admiral was owed this amount for the provision of food and beverage to the vessel. The vessel was owned by Florida Entertainment, L.L.C., which had previously filed for bankruptcy. Numerous parties intervened in the lawsuit claiming competing liens or claims against the St. Tropez. The vessel was arrested on June 10, 2005, and ultimately sold on September 13, 2005 for $3,800,000. *See*

---

1. At the hearing on Admiral's motion for summary judgment, the parties agreed that, if appropriate, I could determine the issue of liability as a matter of law in favor of any party.

Writ of Attachment [D.E. 11]; U.S. Marshals' Return of Order of Sale [D.E. 122].

The parties have reached an agreement as to the distribution of the sale proceeds. *See* Amended Order of Partial Distribution [D.E. 365]. The only pending dispute concerns the crew members' claims for tips collected during the time that the vessel was under the control of the bankruptcy trustee—and before its arrest.[2] Admiral has filed a motion for summary judgment contending that the crew members' claims for tips lie in bankruptcy and not in admiralty. The crew members, on the other hand, contend that maritime liens for wages are liens independent from the bankruptcy estate.

## II. Legal Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See id.* at 323, 106 S.Ct. 2548. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20

L.Ed.2d 569 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See Stewart,* 117 F.3d at 1285.

## III. Discussion

Admiralty's main argument is that the crew members' claims for wages lie against the bankruptcy estate and not against the vessel—or the proceeds from the vessel's sale. I disagree.[3]

■■■ A maritime lien is "[a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises." *See Dresdner Bank AG v. M/V Olympia Voyager,* 465 F.3d 1267, 1272 (11th Cir.2006) (citing *Galehead, Inc. v. M/V ANGLIA,* 183 F.3d 1242, 1247 (11th Cir.1999)). Claims for wages by seamen occupy a preferential place in the echelon of maritime liens. Indeed, a bedrock of maritime law is that seamen's wages "are sacred liens, and, as long as a plank of the ship remains, the sailor is entitled, *against all other persons,* to the proceeds as a security for his wages." *The John G. Stevens,* 170 U.S. 113, 119, 18 S.Ct. 544, 42 L.Ed. 969 (1898) (emphasis added).

■■■ On the other hand, "the long established rule in admiralty law is that 'no lien can attach to a vessel while she is in judicial custody.' " *Dresdner,* 465 F.3d at 1272. This general rule trumps a seaman's sacred claim for wages. *See Dresdner,* 465 F.3d at 1274–75 (*citing The Astoria,* 281 F. 618, 622 (5th Cir.1922))("In

---

**2.** There is a factual dispute as to the amount of unpaid tips.

**3.** In its motion for summary judgment, Admiral also argued that a claim for tips was not a claim for wages. However, at the hearing on

its motion, Admiral did not pursue this argument. I assume that Admiral now concedes that (as the evidence suggests) the crew members' claims for tips arise under a formal or informal employment agreement.

other contexts, such as the collection of seamen's wages, we have applied the custodia legis doctrine to cut short the accrual of a maritime lien."); *Oil Shipping B.V. v. Sonmez Denizcilik Ve Ticaret, A.S,* 10 F.3d 176, 178–79 (3d Cir.1993) (cited with approval by the Eleventh Circuit in *Dresdner* ) ("Since the seizure revokes all authority to incur liabilities on behalf of the ship, one who renders services without first requiring the Court's permission, does so at his risk."). The only exception to this rule is that post-judicial custody claims for necessaries can be paid as "expenses of justice" if equity and good conscience so require. *See id.* at 1272.

It is undisputed that the St. Tropez was under the control of the bankruptcy trustee when the tips in question were collected. Therefore, to decide this case, I need to determine as a threshold matter whether control of the St. Tropez by the trustee constitutes "judicial custody" of the vessel.

■ There is a surprising dearth of authority on this issue. In *The Resolute,* 168 U.S. 437, 440, 18 S.Ct. 112, 42 L.Ed. 533 (1897), the Supreme Court noted that "the rendition of mariner's services imports a [maritime] lien, and the mere fact that the vessel is navigated by a receiver does not necessarily negative such lien." This language, albeit dicta, strongly suggests that management by a receiver or trustee is not judicial custody for purposes of the attachment of maritime liens. If management by a trustee were judicial custody, then a seamen's claim for wages earned while the ship was navigated by the trustee would always fail. *See The Washington,* 296 F. 158, 165 (E.D.N.Y.1924). *See also See Dresdner,* 465 F.3d at 1272.

In *The Washington,* a bankruptcy receiver argued that the plaintiff's claims for

wages failed because the wages had been earned after the receiver took over the ship. The court rejected this argument and held that "where a receiver in bankruptcy operates a vessel and employs a crew, no reason, on principle, suggests itself why the maritime law with respect to liens for wages should be suspended." 296 F. at 165. The court noted that the receiver claimed the vessel as owner and operated it to make a profit for the bankruptcy estate. *See id.*

I find the reasoning of the court in *The Washington* persuasive. *See also* Robert Force, The Law of Seamen at § 20:11 (5th Ed.2007); Thomas J. Schoenbaum, Admiralty and Maritime Law at § 9–9 (3d Ed.2001). The trustee in this case assumed and continued the operation of the St. Tropez until its arrest for the benefit of the bankruptcy estate. In so doing, the trustee stepped into the shoes of Florida Entertainment—the owner of the vessel. *See O'Halloran v. First Nal't Bank of Fla.,* 350 F.3d 1197, 1202 (11th Cir.2003) (a trustee stands in the shoes of the debtor in bankruptcy proceedings); *In re CHS Elecs., Inc.,* 261 B.R. 538, 544 (Bankr. S.D.Fla.2001) (trustee generally stands in the shoes of the debtor). He retained the crew members to serve the St. Tropez's passengers as Florida Entertainment had in the past. As a result, the crew members' maritime lien for wages attached to the St. Tropez as if the vessel were still under Florida Entertainment's control.

■ *Dresdner* is not to the contrary. Indeed, in *Dresdner,* the Eleventh Circuit seems to have drawn the judicial custody line at the point of the vessel's arrest.[4] As the crew members noted in their supplemental brief, the *Dresdner* panel allowed a maritime lien for services provided before

---

4. There are a number of references to "custodia legis" in *Dresdner.* However, I am reluctant to infer any tacit principle of law from the use of this term. The phrase "in custodia legis" literally means "in the custody of the law" and, without more, does not connote any legally significant event. *See* Black's Law Dictionary (7th Ed.1999).

the arrest of the vessel but after the filing of bankruptcy. The arrest of the vessel seems to be a logical point to mark when a vessel is in judicial custody. An arrest is by definition a disruptive event. It implicates the seizure of the vessel and the discontinuation of its operations. *See* Shoenbaum, Admiralty and Maritime Law at § 21–3. In contrast, the takeover of a vessel by a trustee is generally more seamless, and it is more akin to a change in management.

In sum, I conclude that the St. Tropez was not in judicial custody under *Dresdner* at the time that the tips claimed by the Crew were collected by the trustee. As such, the Crew has a valid lien on the proceeds of the vessel's sale.

 Further, even if the St. Tropez was deemed to be in judicial custody at the time in question, I conclude that the crew members' claims must be paid from the proceeds of the sale as an expense of justice. A district court has the equitable power to give priority as an expense of justice to claims arising out of the administration of a vessel in judicial custody. *See Dresdner*, 465 F.3d at 1272. An expense incurred after a vessel's arrest for the benefit of all claimants generally falls within this equitable category. *See The Poznan*, 274 U.S. 117, 120–21, 47 S.Ct. 482, 71 L.Ed. 955 (1927); *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 923 (3d Cir. 1987). The crew members' claims for unpaid tips are the quintessential example of an expense of justice. It is undisputed that the crew members' services were essential to the continued operation of the vessel, were provided pursuant to an agreement with the bankruptcy trustee, and benefitted all the claimants. Equity and good conscience require that the crew members be compensated for their services.

## IV. Conclusion

The crew members have a valid lien on the proceeds from the sale of the St. Tropez. Accordingly, summary judgment is entered on liability in favor of the crew members and against Admiralty. Trial will be scheduled by separate order.