## THE RESOLUTE, DOWSETT, Libellant.

## THE RESOLUTE, WILSON, Libellant.

APPEALS FROM THE DISTRICT COURT OF THE DISTRICT OF OREGON.

Nos. 135, 136. Submitted November 12, 1897. — Decided December 6, 1897.

A District Court of the United States has jurisdiction of a libel of a vessel for seamen's wages, which accrued while the vessel was in the custody of a receiver appointed by a state court upon the foreclosure of a mort-

gage upon the property of a railroad company, owner of the vessel, the vessel having been sold and passed into the purchaser's hands, and the receiver discharged when the warrant of arrest was served.

The remedy against the decree of the District Court was an appeal to the Circuit Court of Appeals.

No. 135 was an appeal from the District Court for the District of Oregon, awarding to the libellant, George Dowsett, the sum of $825.50 due to him individually, and the further sum of $358.02 due to him as the assignee of one Tellefson, for wages as seamen upon the tug Resolute. The tug was engaged in the business of towing vessels and barges on and over the bar between Yaquina Bay and the Pacific Ocean, and the waters tributary thereto, within the District of Oregon.

The libel, which was filed on April 26, 1894, was in the ordinary form of a libel for seamen's wages, except that it alleged that the vessel was at that time in the hands of a receiver of a Circuit Court for the State of Oregon. Upon application being made for a warrant for arrest, it was refused upon the ground that the tug was within the custody of a receiver of a state court. Subsequently, and on February 25, 1895, upon affidavit that the receiver had been discharged and the property sold, the order denying the warrant of arrest and directing that the libel remain in abeyance until the tug should be discharged from the custody of the state court, was vacated, and a warrant of arrest ordered to issue. The tug having been released upon bond given, the libel was thereupon amended by alleging that while the said services were being rendered the steam tug was in charge of a receiver appointed by the Circuit Court of the State of Oregon, and that she had since been sold to parties having notice of libellant's claim and had been discharged from such receivership. Exceptions were thereupon filed to the libel upon the ground that it showed that when the services were rendered, the steam tug was in charge of, and operated by, a receiver of the Oregon and Pacific Railroad Company, a corporation, the owner of said steam tug; and that no maritime or other lien had arisen by reason of such employment, or by the rendition of such services; and also that the court had no juris-

diction in the premises. Upon a hearing before the court, these exceptions were overruled and leave given to answer the amended libel.

Claimants having elected not to answer the libel, their default was entered, and a final decree awarded in favor of the libellant in the amount claimed by him; whereupon the claimants prayed an appeal to this court; and the District Court certified that "the only question arising upon said appeal is the question as to whether or not, under the facts stated in the amended libel and the exceptions thereto, this court acquired or had jurisdiction to pronounce the said decree." A motion was made to dismiss the appeal for want of jurisdiction.

*Mr. L. B. Cox, Mr. W. W. Cotton, Mr. Thomas O'Day* and *Mr. C. F. Lord* for the motion to dismiss; and for the respondents.

*Mr. William T. Muir* and *Mr. John W. Whalley* opposing, and for the claimants.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The sole question presented by the record in this case is whether the court was correct in assuming jurisdiction of a libel for seamen's wages, which accrued while the vessel was in the custody of a receiver, appointed by a state court, upon the foreclosure of a mortgage upon the property of the Oregon and Pacific Railroad Company, owner of the tug.

Jurisdiction is the power to adjudicate a case upon the merits, and dispose of it as justice may require. As applied to a suit *in rem* for the breach of a maritime contract, it presupposes, first, that the contract sued upon is a maritime contract; and, second, that the property proceeded against is within the lawful custody of the court. These are the only requirements necessary to give jurisdiction. Proper cognizance of the parties and subject-matter being conceded, all other matters belong to the merits.

The contention of libellant is that, as a maritime lien is the sole foundation of a proceeding *in rem*, such facts must be averred as to show that a lien arose in the particular case ; or, at least, that if the libel shows that a lien could not have existed, it should be dismissed for want of jurisdiction. The averment relied upon in this libel is that the vessel was at the time the services were rendered in the hands of a receiver appointed by a state court. This fact, however, is not absolutely inconsistent with a lien *in rem* for seamen's wages. *Paxson* v. *Cunningham*, 63 Fed. Rep. 132. It may have been expressly bargained for by the receiver, it may be implied from the peculiar circumstances under which the services were rendered, or it might be held to have arisen from the peremptory language of the statute, Rev. Stat. § 4535, that " no seaman shall, by any agreement other than is provided by this title, forfeit his lien upon the ship, or be deprived of any remedy for the recovery of his wages to which he would otherwise have been entitled, and every stipulation in any agreement inconsistent with any provison of this title . . . shall be wholly inoperative." *Prima facie*, the rendition of mariner's services imports a lien, and the mere fact that the vessel is navigated by a receiver does not necessarily negative such lien, although there may be facts in the particular case to show that the above statute does not apply, or that credit was expressly given to the owner, to the charterer or to some third person. In fact, the question of lien or no lien is not one of jurisdiction, but of merits.

It is true that there can be no decree *in rem* against the vessel except for the enforcement of a lien given by the maritime law, or by a state law ; but if the existence of such a lien were a question of jurisdiction, then nearly every question arising upon the merits could be made one of jurisdiction. Thus, supplies furnished to a vessel import a lien only when they are sold upon her credit; and the defence ordinarily made to such claims is that they were sold upon the personal credit of the owner or charterer ; but certainly it could not be claimed that this was a question of jurisdiction. The existence of a lien for collision depends upon the question of fault or no

fault, but it never was heard of that it thereby became a question of jurisdiction. Salvage services, too, ordinarily import a lien of the very highest rank; but it has sometimes been held that, if such services are rendered by seamen in the employ of a wrecking tug, or by a municipal fire department, no lien arises, for the reason that the men are originally employed for the very purpose of rescuing property from perils of the sea, or loss by fire. In the case under consideration a portion of the libellant's claim arises by assignment from Tellefson, and the authorities are almost equally divided upon the question whether such assignment carries the lien of the assignor to his assignee. Obviously these are not jurisdictional questions.

In determining the question of a lien in the case under consideration much may depend upon the manner in which the vessels were sold by the receiver. Were they sold in bulk, and merely as a part of the entire property of the insolvent corporation, upon the foreclosure of the mortgage, or was each vessel sold separately, and subject to the liens for mariner's wages which accrued before and while they were in the possession of the receiver? Did the order direct these vessels to be sold free of maritime liens, or subject to them, or was it silent in this particular? Were the lienholders upon these vessels paid from the purchase money, according to their relative rank, as they would have been had the sale been conducted by a court of admiralty? If they were, that would amount to very strong, if not conclusive, evidence against the subsequent endeavor to enforce the liens in a court of admiralty. We cannot assume that the court would authorize its receiver to run these vessels without making some provision for a preferential payment of their current expenses. *Meyer* v. *Western Car Co.*, 102 U. S. 1; *Kneeland* v. *American Loan Co.*, 136 U. S. 89. None of these were questions which went to the jurisdiction of the court to entertain the libels, but were such as would properly arise, either upon the exception to the libels, or upon an answer putting the facts in issue.

Had the vessel, at the time the warrant of arrest was served, been in the actual custody of the receiver, a different question

would have been presented; but the facts of this case show that she had been sold, and had passed into the hands of her purchaser, and that the receiver had been discharged.

The case of *Ex parte Gordon*, 104 U. S. 515, goes even farther than is necessary to support the action of the District Court in assuming jurisdiction of this case. In that case a writ of prohibition was sought to restrain the District Court for the District of Maryland from proceeding against a vessel to recover damages for loss of life in a collision. It was held that, as the case was one of a maritime tort, of which the District Court unquestionably had jurisdiction, it was for that court to decide whether the vessel was liable for pecuniary damages resulting from the loss of life. "Having jurisdiction," said the Chief Justice, "in respect to the collision, it would seem necessarily to follow that the court had jurisdiction to hear and decide what liability the vessel had incurred thereby." The question was held not to be jurisdictional, but one properly arising upon the merits. See also *The Charkieh*, 8 Q. B. 197; *Schunk* v. *Moline &c. Co.*, 147 U. S. 500; *Smith* v. *McKay*, 161 U. S. 355.

So, too, in *In re Fassett*, 142 U. S. 479, the owner of the yacht Conqueror filed a libel for possession, against her and the collector for the port of New York, claiming delivery of the vessel to him and damages against the collector, who had seized her as a dutiable import. The collector applied to this court for a writ of prohibition, alleging that the District Court had no jurisdiction of the suit. We held that the subject-matter of the libel was a marine tort; that the question whether the vessel was liable to duty was properly justiciable in the District Court, and that that court had jurisdiction. Said Mr. Justice Blatchford, in delivering the opinion of the court, p. 484: "The District Court has jurisdiction to determine the question, because it has jurisdiction of the vessel by attachment, and of Fassett by monition; and for this court to decide in the first instance, and in this proceeding, the question whether the yacht is an article imported from a foreign country, and subject to duty under the customs-revenue laws, would be to decide that question as a matter of original jurisdiction,

and not of appellate jurisdiction, while as a question of original jurisdiction, it is duly pending before the District Court of the United States on pleadings which put that very question in issue." See also *In re Cooper*, 143 U. S. 472.

No. 136 is also a libel for wages, and involves precisely the same questions as are involved in the case of Dowsett, and will be disposed of in the same way. Claimants have mistaken their remedy in these cases, and should have appealed to the Circuit Court of Appeals.

The decrees of the District Court, in so far as they assume jurisdiction of these cases, are therefore

*Affirmed.*