NORTHWESTERN COMMERCIAL CO. v. BARTELS.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1904.)

No. 1,001.

1. MARITIME LIENS—LOSS BY LACHES—SALE IN PROCEEDINGS IN STATE COURT.
It seems that under the admiralty law applicable to the enforcement of liens the holder of a maritime lien, who participates in a proceeding in a state court which results in a sale of the vessel at his instance, loses his lien, if not by estoppel, at least by laches.

2. SAME—ESTOPPEL TO ENFORCE.
Libelant, who was entitled to a lien on a schooner for salvage services and wages as master. filed his claim in receivership proceedings in a state court, and it was allowed. He consented to a sale of the vessel, and urged a corporation to bid, giving its officers to understand that his claim would be settled from the proceeds. He acquiesced in the sale to such corporation, and in the delivery of the vessel thereunder, and after the sale was confirmed asserted the priority of his claim to the proceeds, and only withdrew his claim after another lien, which exhausted the fund, had been given preference. *Held*, that he was estopped by his conduct to enforce his lien against the vessel in admiralty as against the purchaser.

---

¶ 1. Waiver and extinguishment of maritime liens, see note to The Nebraska, 17 C. C. A. 102.
See Maritime Liens, vol. 34, Cent. Dig. § 87.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

On April 5, 1902, the appellee filed his libel against the schooner Lilly L. to subject her to his claim of lien for services performed in Grantly Harbor in the summer of 1901, at the request of the managing owner thereof, in getting said vessel off the beach and afloat, and for services rendered as master and navigator in bringing her from Port Grantly to Seattle in the fall of that year, all of which services were claimed to have been rendered under an oral agreement with said managing owner, by which the appellee was to be paid at the rate of $100 per month, amounting in all to $786.60, and to have a lien on said vessel therefor. The appellant, as claimant of the schooner, answered, denying some of the material allegations of the libel, and alleging that in December, 1901, an action was instituted in the superior court of Washington for King county by the copartners and owners of said schooner, alleging that the schooner was out of commission, and depreciating in value, and praying that a receiver be appointed to sell her and to wind up the partnership affairs; that on December 20, 1901, a receiver was duly appointed for said vessel; that he gave due and proper notice of his appointment to all creditors and claimants; that on February 1, 1902, the appellee filed with said receiver his claim for services as it is now set forth in his libel; that the claim of the appellee was received by the receiver, and by him filed and allowed; that on February 8, 1902, with the consent of all parties to that action and of the appellee and his attorneys, an order was made directing the sale at public auction of the said vessel, and on March 1, 1902, it was sold to the appellant herein, who was the highest bidder therefor; that said sale was made without protest on the part of the appellee or any person, the said appellee being then and there informed of the sale, and approving and ratifying the same, and that at the time of the sale he informed the appellant that, if it would buy said vessel, he would not claim, and did not claim, any lien against the same for wages or otherwise; that the said appellant purchased said vessel without the knowledge or information that the appellee claimed or expected to claim any lien against the same for work done and performed previous to the sale of said vessel at the receiver's sale, and under the distinct understanding and statement from him that he did not have, nor would he attempt to enforce, any claim or lien against said vessel; that said sale was afterwards confirmed and approved, and that upon a hearing had in said superior court on April 2, 1902, at which hearing the appellee was represented by his attorneys, it was adjudged that the claim of one J. Clark of $476.40 for services performed in repairing said vessel while she was lying on the ways should be allowed as a first lien on the fund derived from the sale; that on April 5, 1902, after the state court had directed the entry of an order in accordance with its judgment, but before the order was signed, the appellee appeared by his attorneys, and upon motion, by leave of the court, withdrew his claim. Exceptions to this answer were filed by the appellee, and they were overruled. Thereafter testimony was taken, and the court adjudged that the appellee had alleged and proved facts sufficient to entitle him to salvage compensation in the sum of $400, with interest, and that the vessel be sold to satisfy the same.

The following facts are established by the evidence: The vessel arrived at Seattle in the latter part of October, 1901. In December following the receiver was appointed in the suit in the state court. At that time, and until after the sale of the vessel, she was lying out of the water, and on the marine ways. The appellee's claim was filed with the receiver on February 1, 1902, and was thereupon allowed. The order of sale was made on February 8th. On March 1st the vessel was sold at public auction to the appellant for $502, and on March 8th the sale was confirmed. On April 2, 1902, the question of the priority of liens upon the fund in the hands of the court for distribution was heard before the superior court. The appellee was present, and testified before the court concerning his services and the items of his claim. His attorneys urged that his claim was a first lien upon the fund after payment of the receiver's costs and expenses. Clark, who made the last repairs on the vessel, contended that his claim was superior to that of the appellee. The court, at the conclusion of the hearing, rendered an oral decision adjudging the lien of

Clark to be superior, and the claim of the appellee to be second thereto, and directed that a judgment order be made accordingly. On April 5th, and before the judgment order was presented to the court for signature, the appellee, by his attorneys, upon an ex parte application, obtained leave of the court to withdraw his claim, and thereupon withdrew it. The testimony pertaining to the defense pleaded by the appellant is, in substance, as follows: John Rosene, president of the appellant, testified that the appellee came to his office in Seattle several times after it had been decreed that the schooner be sold, requested him to become a bidder, and gave him to understand that he had a claim against the schooner, and that he desired to have the sale made, and to have some person bid in competition with Clark, who also had a lien; that at the day of the sale the witness was present, and had bid $400, and had decided to make no further bid, when the appellee urged him to bid more, whereupon he bid $502, and the vessel was struck off to him. He further testified that at the time of the sale, before buying, in the presence of the appellee, he made inquiry of the receiver concerning the condition of the vessel as to liens or claims against it, and whether or not all parties who had or claimed to have such liens or claims were included in the proceedings, and that the receiver answered him that, so far as he knew, all claims against the vessel were included in the proceedings. The appellee testified that before the sale he had a conversation with Mr. Williams, an officer of the appellant company, in which he told Williams that he thought the vessel would sell for about a thousand dollars, and that Williams said, "Then you will get all the money," and that the witness answered: "Pretty close to that besides what the receiver will get. * * * I stated to him that I calculated to get my money out of that vessel, no matter what became of her, or who would buy her; and I told him if they would buy her the money would come to me—what she was sold for; and he was satisfied to that effect." He testified further that on the day of the sale he informed Mr. Rosene that he had a $786 bill against the vessel, and that Rosene said, "This will come out of this sale when they sell her," and that he replied, "I don't know where it is going to come out, but that is the claim that I have against the vessel." The receiver testified that he did not hear the conversation between the appellee and Rosene at the time of the sale, but that they were there together, and during the bidding the appellee "frequently spoke, or rather whispered, to Rosene—spoke low." Trenholme, the secretary of the appellant, testified that some time prior to the sale the appellee came to the office of his company to induce the company to buy the boat, and stated that liens had been filed with the receiver, and that she was going to be sold, and that among other claims was his own; that he came in repeatedly to induce the company to bid; that he stated that Mr. Clark "had trumped up a claim for repairs that was not done, and for the use of the ways at Ballard, and that he would like to see Mr. Clark beaten out of his claim." There was no denial of any of the foregoing testimony. The only evidence concerning the value of the schooner was that of the appellee, who estimated it at $1,000, and that of Trenholme, who testified that it was of no value whatever.

John P. Hartman, for appellant.

Greene & Griffiths, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The contention that the proceedings in the state court and the sale thereunder bar the present suit presents a question that has not been directly met by any decision of the Supreme Court. It is undoubtedly true that the fact that a libelant has already brought suit in a state court for the same claim is no bar to a subsequent proceeding in admiralty. The Highlander, 1 Sprague, 510, Fed. Cas. No. 6,476; The Kalorama,

10 Wall. 218, 19 L. Ed. 941. But it would seem that, if the proceedings in the state court have proceeded so far that a sale has been had upon its judgment, it would operate as a waiver of the lien, provided that the court assumed to sell the entire vessel and all rights and interests therein. In The Kalorama, the court, referring to the suggestion that the lien was waived by the commencement of an action for the same claim in the state court, said:

"But the record shows that the action is still pending, and it is well-settled law that the pendency of such an action is no bar to a suit in a federal court. Had the judgment been rendered, it might have been different."

In Moran v. Sturges, 154 U. S. 277, 14 Sup. Ct. 1025, 38 L. Ed. 981, the court said:

"If, then, the receiver had first taken actual possession of these vessels and sold them, such sale would not have cut off maritime liens and the right to have them enforced; and while it may be true that the state courts exercising equitable jurisdiction might undertake in the distribution of property to save the rights of holders of maritime liens, yet it is certain that those courts would have no power by a sale under statute to destroy their liens, unless they had voluntarily submitted themselves to that jurisdiction."

The inference to be drawn from this language of the opinion is that, if the lienholders had submitted themselves to the jurisdiction of the state court, the sale would have divested the vessel of their liens. In The Resolute, 168 U. S. 441, 18 Sup. Ct. 112, 42 L. Ed. 533, Mr. Justice Brown said:

"Did the order direct these vessels to be sold free of maritime liens or subject to them, or was it silent in this particular? Were the lienholders upon these vessels paid from the purchase money according to their relative rank as they would have been had the sale been conducted by a court of admiralty? If they were, that would amount to very strong, if not conclusive, evidence against the subsequent endeavor to enforce the liens in a court of admiralty."

In Dudley v. The Superior and Sexton v. The Troy, 1 Newb. Adm. 176, Fed. Cas. No. 4,115, certain holders of maritime liens and nonmaritime liens seized the vessels subject thereto by process from the state courts. Afterwards the boats were sold under the order of the court of admiralty, and the proceeds paid into the registry thereof. Holders of the nonmaritime liens asserted the right to share equally in the funds with those who held liens originally maritime, and who had not made seizures under the state law. The court expressed the view that a party who has voluntarily waived his admiralty lien and resorted to the local law for his indemnity and protection could not resume his lien at his pleasure, and thereby be reinstated in his original rights. So, in Stapp v. Steamboat Swallow, 1 Bond, 190, Fed. Cas. No. 13,305, it was said:

"It is, however, clearly consonant with reason and the analogies of law that if a party having an undisputed maritime lien voluntarily waives it by seeking another remedy he cannot be reinstated in his original right."

A case directly in point is The Mary Morgan (D. C.) 28 Fed. 196–202, in which the court said:

"I can recall no instance in which a creditor may sell his debtor's property a second time for the same debt. He invites the public to purchase, proposing

to take the proceeds while the purchaser takes the property. How can he afterwards, in effect, claim the property also?"

It would seem, in view of these decisions and expressions of the court, that under the admiralty law applicable to the enforcement of liens one who participates in such a proceeding in a state court resulting in a sale at his instance, loses his lien, if not by estoppel, at least by laches. The Seminole (D. C.) 42 Fed. 924.

But aside from the question of estoppel by the judgment and sale under the proceedings of the state court or the laches of the appellee, we think his conduct and representations to the appellant estop him now to assert a lien against the vessel. He duly presented his claim to the receiver in the state court, and his claim was allowed. After that court had ordered the sale of the vessel, he went to the officers of the appellant, and urged them to become purchasers at the sale. At the time of the sale he was present, conferring with the president of the appellant; and when the latter inquired of the receiver if all claims against the vessel were included in the proceedings, and the receiver replied that they were, the appellee made no denial of that statement. A month later, and after the sale had been confirmed, he appeared with his attorneys before the state court, and he testified concerning his claim and the items thereof. It was not until the court had announced its decision adjudging Clark's lien to be prior to his that the appellee withdrew his claim. He testified in the present case that prior to the sale he stated to Williams, the treasurer of the appellant, that he thought the vessel would sell for about a thousand dollars, and that he would get practically all the proceeds after payment of the receiver, and that he further said that, if the appellant would buy her, the money that she was sold for would come to him, and that Williams "was satisfied to that effect." In what plainer language could he have informed the appellant that his claim was included among those for the satisfaction of which the vessel was to be sold? The force of his statement to Williams is not modified by the fact that he testified that he further said that he calculated to get his money out of that vessel, no matter what became of her, or who would buy her. The plain inference to be drawn from all that he said was that he looked to the proceeds of that sale to satisfy his lien, and that Williams was satisfied to that effect. He does not deny that he told the secretary of the appellant that liens had been filed with the receiver, and that the schooner was going to be sold, and that among other claims was his own. The learned judge of the District Court was of the opinion that, if the proof showed that the appellee induced the claimant to purchase the vessel by making a verbal agreement to relinquish his claim and to look to the purchase money, and that the amount bid was sufficient to pay him any considerable part of the amount which he was justly entitled to receive, there would be substantial ground for an estoppel, but that there could be no estoppel from the facts proved for the reason that the amount bid was not sufficient to pay him anything. We think that the fact that the amount bid was not sufficient under the order of distribution made by the state court to pay the appellee anything is wholly immaterial to

the question under discussion. The estoppel consists in the appellee's conduct and representations and the act of the appellant thereby induced. It is in no way affected by the subsequent disposition of the money, or by the fact that the expectation of the appellee was not realized. The appellant had the right to rely on his representations. It became the purchaser at his instance, and upon his assurance that his claim was one for the payment of which the vessel was being sold.

We are not unmindful of the general rule that the lien of a seaman for his wages is under the protection of courts of admiralty, and that nothing short of absolute payment, or some act on his part showing an intelligent intention to waive his lien, shall be construed as a waiver thereof, and that courts of admiralty take notice of the improvidence, the ignorance, and the guilelessness of seamen, and protect their interests. But we see no place for the application of the rule to the present case. A mariner who for 15 years has had experience as a master and navigator of vessels can hardly be said to come into court in the attitude of a ward of the admiralty. There is nothing in this case to show that the appellee was overreached, or unjustly dealt with. He was represented in the proceedings in the state court by able counsel, and he appears to have been fully capable of taking care of himself. His chief solicitude seems to have been to obtain a bidder upon the vessel for his own benefit, and to exclude the claim of the other lienholder. There can be no doubt of the power of a seaman to release his claim of lien if the release is made upon adequate consideration, or upon some corresponding benefit resulting to him. The International (D. C.) 30 Fed. 375. In the Olive Mount (D. C.) 50 Fed. 563, Nelson, District Judge, held that seamen who had authorized the owner of their vessels to make settlement in their behalf of all claims for salvage could not, after such settlement, collect against the salved property. Said the court:

"They all had knowledge of the negotiations going on between the owners of the vessel and the company for the settlement, but they made no objections, set up no separate claim, nor asked nor expected to be consulted. The vessel also was delivered up to the owners without objections from them. They claimed their share after the money was paid, and it was only after their failure to come to an agreement with the company that they brought this suit. Their demand on the company ratified the settlement even if no previous authority had been given."

So in the present case it appears that the appellee participated in the proceedings in the state court, consented to the sale of the vessel, urged the appellant to become a purchaser, gave it to understand that his claim was to be settled by the purchase money, acquiesced in the sale after it was made and in the delivery of the vessel to the appellant, and made no objection to any of the proceedings until he found that the claim of Clark, whom he specially desired to exclude from participation in the fund, had been adjudged to be superior to his own. Every consideration of justice and fair dealing leads to the conclusion that these facts constitute an estoppel in pais.

The objection is made that the answer is not so framed as to present the defense of estoppel. No objection was interposed to the testimony on that ground. The court below considered it as one of

the defenses in the case, and we are justified in so regarding it here. It is the facts pleaded that constitute an estoppel in any given case, and not the term by which the defense may be designated.

The decree of the District Court is reversed, and the cause is remanded, with instruction to dismiss the libel.