STANDARD OIL CO. v. THE PACIFIC (ARMSTRONG, Intervener;
B. M. BEHRENDS BANK, B. M. BEHRENDS CO., and
MOON, Mortgagees).

(First Division. Juneau. April 21, 1919.)

No. 1823–A.

1. Maritime Liens ⊙➾25—Lienable and Nonlienable Items Mingled in Maritime Lien.

The libelant furnished oil upon the order and credit of the James Box & Lumber Company, generally, for use on several boats chartered by it, including the launch Pacific, and for use in its business. Some of the oil so ordered by the said company constituted supplies for the launch Pacific, owned and operated by one Tibbits, under charter to the James Box & Lumber Company; but there was no way of finding out how much. Libelant could not tell, and no other witness did tell. In other words, lienable and nonlienable claims were inextricably mingled and confused. The lien on the Pacific must therefore fail.

2. Maritime Liens ⊙➾25—Lienable and Nonlienable Items Mingled in Maritime Lien.

Armstrong, intervener, filed his maritime lien on the launch Pacific, for services on a general balance composed of the sums due him as engineer and later, as a watchman while the launch was tied up. For whatever is due as an engineer he would have a lien, but for what is due as a watchman while the boat was laid up he has no lien, because such services are not maritime. There is no evidence as to how much is due him as an engineer, or how much is due him as a watchman, and so the lien must fail.

3. Admiralty ⊙➾15—Courts—Jurisdiction.

Where libels against a vessel have failed for want of proper proofs, or for other reasons, an admiralty court has no jurisdiction to foreclose a general mortgage, and the cause must be dismissed.

V. A. Paine, of Juneau, for libelant.

Hellenthal & Hellenthal, of Juneau, for respondent.

H. B. Le Fevre, of Juneau, for intervener.

R. E. Robertson, of Juneau, for B. M. Behrends Bank and B. M. Behrends Co.

J. H. Cobb, of Juneau, for Moore.

JENNINGS, District Judge. The launch Pacific, owned by Neida Tibbits, commanded by Capt. C. E. Tibbits, and

---

⊙➾See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under charter to the James Box & Lumber Company, was libeled by the Standard Oil Company for oil alleged to have been furnished to her on order of the said James Box & Lumber Company. There was an intervening libel of one Armstrong, who claims a balance due for wages as engineer and watchman, and also intervening libels of mortgagees of the vessel.

As to the libel of the Standard Oil Company: The evidence shows clearly that the oil was not furnished on the credit of the vessel, and it is contended that therefore there is no lien; the court being cited to The Resolute, 168 U. S. 437, 18 Sup. Ct. 112, 42 L. Ed. 533, and many kindred cases. It used to be the law that, in order to have a lien on the vessel for supplies, the said supplies must have been furnished on the credit of the vessel, but in 1910 Congress passed a law which expressly provides that a lien accrues to any one "furnishing repairs, supplies," etc., "to a vessel * * * upon the order of the owner or owners, * * * or of a person by him or them authorized," and that the lien "may be enforced by proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." U. S. Comp. St. § 7783.

The oil was ordered by, and was furnished solely on the credit of, the James Box & Lumber Company, who was actually known to libelant to be a charterer only, and I doubt very much if such charterer comes within the terms "of a person by him or them authorized."

But, however that may be, I am of the opinion that the libel cannot be sustained for the reason that it appears that much, perhaps the greater part, of the oil for which the claim is made was not furnished as a supply to the vessel, but was furnished to James Box & Lumber Company generally— that is, for use on other boats and in their general business. Some of the oil constituted supplies for the Pacific, but there is no way of finding out how much. Libelant could not tell, and no other witness did tell. In other words, lienable claims and nonlienable claims are inextricably mingled and confused. The lien, therefore, must necessarily fail.

As to the intervening libel of Armstrong, also, the latter rule applies. The testimony is that the sum due was due for services as watchman, or at least that it was a general

balance, composed of the sums due him as an engineer and later as a watchman while the launch was tied up. For whatever is due as an engineer he would have a lien, but for what is due as a watchman while the boat was laid up he has no lien, because such services are not maritime. 70 L. R. A., note 5, page 381. There is no evidence as to how much is due him as an engineer, or how much is due him as a watchman; and so, again, the lien must fail.

As the libel and the intervening libel of Armstrong have failed, and as an admiralty court cannot foreclose a general mortgage, the court has no further jurisdiction in the case. Bogart v. Steamboat John Jay, 17 How. (58 U. S.) 399, 15 L. Ed. 95; New York & V. S. S. Co. v. Calderwood, 19 How. (60 U. S.) 241, 15 L. Ed. 612.

The libel and intervening libel are accordingly dismissed.