## THE NEVADA. *

(Circuit Court of Appeals, Ninth Circuit. March 1, 1926.)

No. 4593.

1. **Courts** ⬤=385(4)—**Whether vessel owned and operated by foreign government is subject to process is jurisdictional question (Judicial Code, § 238 [Comp. St. § 1215]).**

Under Judicial Code, § 238 (Comp. St. § 1215), question whether vessel owned and operated by foreign government is subject to process of court is jurisdictional.

*Rehearing denied April 30, 1926.

2. **International law** ⬤=10—**Libel of privately owned vessel for breach of seaman's contracts while owned by foreign government held within court's jurisdiction.**

Libel against privately owned vessel for breach of seaman's contracts while owned and operated by foreign government *held* within jurisdiction of District Court having lawful custody of vessel and proper cognizance of parties.

3. **Seamen** ⬤=27.

Seamen have no lien for wages against privately owned vessel, owned and operated by foreign government when liability was incurred.

4. **Admiralty** ⬤=25—**Claimant, claiming and bonding vessel libeled for breach of seaman's contract, held not to have consented to court's jurisdiction.**

Claimant, by claiming and bonding ship libeled for breach of seaman's contract while owned and operated by foreign government, did not consent to jurisdiction of court; general appearance in suit purely in rem having no greater effect than special appearance to set aside unauthorized arrest or attachment on general suit in personam.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Libel by Eugene Bergron and others against the steam vessel Nevada; Ernest O. Hellsten, claimant. From a decree sustaining exceptions to and dismissing the libel, libelants appeal. Affirmed.

H. W. Hutton, of San Francisco, Cal., for appellants.

Ambrose Gherini, Irving H. Frank, and Nathan H. Frank, all of San Francisco, Cal. (Keith Ferguson, of San Francisco, Cal., of counsel), for appellee.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

HUNT, Circuit Judge. The appellants seek to establish a lien on a ship formerly known as the Rogday, and to recover for wages for one month after date of discharge. They allege that they shipped on December 15, 1919, under a written contract with the Russian government through the Division of Supplies to the Russian Embassy at Washington, D. C.; that under the contract appellants agreed to serve as seamen on the ship, then a Russian naval transport, on a voyage from New York to Vladivostok and return to the United States. By the contract each agreed to do the work assigned to him to the best of his ability and knowledge, and "in accordance with the seamen's laws of the United States of North America, as they apply to seamen on board foreign merchant-

men, to wit, ships not flying the flag of the United States of North America." The ship left New York, and upon arrival at San Francisco in February, 1920, the appellants, against their protests, were discharged and paid their wages.

In February, 1920, the libelants (except eight of them) filed a libel against the ship, but the District Court held that a government-owned ship engaged in public service was not liable to seizure. The Rogday, 279 F. 130. No appeal was taken from that decision. It is further alleged that in December, 1920, the vessel was sold to private persons, and thereafter sailed under the flag of the United States as the Nevada.

Exceptions to the present libel were filed, based upon the ground that no lien existed at the time the ship was the property of the Russian government, and that no lien attached after the ship passed to the ownership of private parties. Decree sustaining the exceptions and dismissing the libel, with costs to respondent and claimant, was entered January 8, 1925, and this appeal was taken on April 7, 1925.

[1, 2] Appellee presents the question of the jurisdiction of this court. We take it as established that while the vessel was owned and operated by the Russian government the question whether the ship was subject to the process of the court directly concerned the power of the court to entertain and determine the suit, and became a jurisdictional one. Section 238, Judicial Code (Comp. St. § 1215); The Pesaro, 41 S. Ct. 308, 255 U. S. 216, 65 L. Ed. 592. But we think that after the ship passed to private ownership there was no want of power to sue the ship for breach of a maritime contract, and that the vessel, being within the lawful custody of the District Court, and there being proper cognizance of the parties, the court had jurisdiction, and all other matters belonged to the merits.

In The Resolute, 18 S. Ct. 112, 168 U. S. 437, 42 L. Ed. 533, there was an appeal from the District Court from a decree awarding moneys due libelant as an individual and as assignee of another person, for wages as seamen upon the tug Resolute. The libel was in the ordinary form of libel for seamen's wages, except that the ship was at the time in the hands of a receiver of the state court. On appeal the Supreme Court said that, as applied to a suit in rem for the breach of a maritime contract, jurisdiction presupposes that the contract sued upon is maritime, and that the property proceeded against is within the lawful custody of the court. Justice

Brown, for the court, said: "These are the only requirements necessary to give jurisdiction. Proper cognizance of the parties and subject-matter being conceded, all other matters belong to the merits."

There, as here, it was contended that, as a maritime lien is the sole foundation for a proceeding in rem, it must be shown that a lien arose in the particular case, or that, if the libel shows that a lien could not have existed at the time, it should be dismissed for want of jurisdiction; but the court held that the question of a lien or no lien is not one of jurisdiction, but of merits, and said: "It is true that there can be no decree in rem against the vessel, except for the enforcement of a lien given by the maritime law, or by a state law; but, if the existence of such a lien were a question of jurisdiction, then nearly every question arising upon the merits could be made one of jurisdiction."

[3] We hold, however, that the amended libel was properly dismissed, in that under the facts no lien existed against the ship. The rule sustained in The Western Maid, 42 S. Ct. 159, 257 U. S. 419, 66 L. Ed. 299, is that the maritime law passes by the thing and places the liability on the sovereign owner alone, and not upon the maritime instrumentalities of its sovereignty. The court cited a case pertinent to the instant one. The Fidelity, Fed. Cas. No. 4758. There the ship was owned and operated by the city of New York, and towed a canal boat to a position in a river fixed by the authorities of the municipality. While towing, the canal boat struck an obstruction and was sunk. Libel was brought against the Fidelity, then in control and possession of the municipality. Chief Justice Waite, sitting in the Circuit Court, held that the exemption of public vessels from suits in admiralty arises, not by reason of want of power to sue the public owner, but because of a want of liability on the part of the ship. He also held, as did the the court in The Western Maid, supra, that the personality of a public vessel is merged in that of the sovereign, and said:

"Under such circumstances, redress must be sought from the sovereign, and not from the instruments he uses in the exercise of his legitimate functions. Public creditors look to the public faith for their security, and not to the public property. But it is insisted that, during the public ownership, the maritime liability of the vessel may be incurred, although the remedy in admiralty is suspended. If this be so, then seamen employed on vessels of war, if their wages are not paid and their vessel is sold to private owners, to

be employed in the ordinary business of commerce, may libel the vessel in the hands of her private owners, to secure their money. A simple statement of such a proposition is all that is required to show its fallacy."

[4] In claiming and bonding the ship, the claimant did not consent to jurisdiction of the District Court. The suit, being purely in rem, is itself limited to a proceeding against the thing, and a general appearance in such a suit is not regarded as more general than the limited nature and scope of the suit itself, with no more extended effect than a special appearance to set aside an unauthorized arrest or attachment upon a general suit in personam. The Monte A. (D. C.) 12 F. 331.

The decree is affirmed.