**In re MARTIN.**

Bk. 47536.

District Court, E. D. New York.

May 17, 1948.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for Brown Diesel Works.

William J. Rudin, of Brooklyn, for debtor.

KENNEDY, District Judge.

On April 23, 1948, the debtor filed her petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and an order was entered continuing her in possession of her assets, among which is the motor vessel Amiga Mia, presently docked at the Mill Basin Ship Repair Company at 2124 Mill Avenue, Brooklyn, New York. The ship was then subject to a number of maritime liens, among which was one asserted by Christian A. Brown, doing business as Brown-Diesel Works (herein called Brown). Prior to the filing of the petition under Chapter XI and on the same day, Brown filed his libel in rem against the ship. At 1:30 P.M. on April 23, 1948, the ship was arrested by the United States Marshal for this district. Thereupon the official referee in bankruptcy issued an order to show cause directing Brown and other maritime lienors to show cause why an order should not be made not only restraining the future filing of libels but directing those who had already filed to vacate and discharge them. A temporary restraining order was issued directed specifically at Brown, among others, restraining him from any further proceedings in the pending admiralty suit. Brown immediately, by order to show cause dated May 4, 1948, stayed temporarily any further proceedings by the referee. The relief sought by Brown's order to show cause was principally that the referee, the debtor, and a certain mortgagee (who was not served) be restrained from taking possession of Amiga Mia.

To justify the action of the referee in bankruptcy, counsel for the debtor urges that under the Bankruptcy Act exclusive

jurisdiction of the debtor and his property is given to the bankruptcy court (11 U.S.C.A. § 711) and specific power resides in that court to enjoin or stay the commencement or continuation of suits to enforce "liens" on the property of a debtor as well as proceedings to enforce "any lien" (11 U.S.C.A. § 714).[1] Brown, the libelant in the admiralty suit, on the other hand points to the fact, and it is a fact, that his libel was filed prior to the petition under Chapter XI, that on the same day the res came into the possession of the marshal, and that under these circumstances the admiralty court cannot refuse to proceed, since its jurisdiction over the property was complete before the bankruptcy proceedings were inaugurated, this even assuming that a court of bankruptcy has any jurisdiction over maritime liens. The Philomena, D.C. Mass., 1911, 200 F. 859; cf. The Robert and Edwin, D.C.Mass., 1929, 32 F.2d 390.[2]

The debtor says that The Philomena and other cases to the same effect have no application, because Chapter XI was enacted in 1938, subsequent to the decision of those cases. But Collier (Bankruptcy 14th Edition, Vol 1, sec. 2.10) is clear on the point that the framers of the Chandler Act refused to give bankruptcy courts any admiralty jurisdiction. That being so, it is difficult to understand how the bankruptcy court acquired jurisdiction in the case at bar. A state court is "without jurisdiction to enforce maritime liens" and is, therefore, "incapable of displacing them." Moran v. Sturges, 1894, 154 U.S. 256, 283, 14 S.Ct. 1019, 38 L.Ed. 981, 990. The Congress, as has just been seen, has withheld such jurisdiction, so far as the bankruptcy courts are concerned. This has impelled text writers, at least, to deny the bankruptcy court the power to sell a vessel free of maritime liens, absent a voluntary submission by the lienor (see the quotation in Robinson on Admiralty, Ed. 1939, pp. 415, 416).

■ I need go no further at this time than to say that I can find no specific or implied warrant or justification either in the cases or in the statute for an order by a referee in bankruptcy which will have the effect of transferring from the custody of the marshal to that of the debtor in possession a vessel which has been properly arrested under admiralty process issued and carried out prior to the filing of the debtor's petition. And, on principle, to sanction such a procedure would be certainly to weaken, and possibly to destroy the efficacy of the remedies given to maritime lienors. For example, there are situations under which victims of maritime torts have a remedy in rem but none in personam. The China, 1868, 7 Wall 53, 19 L.Ed. 67; cf. Homer Ramsdell Transp. Co. v. La Compagnie Generale Transatlantique, 1901, 182 U.S. 406, 21 S.Ct. 831, 45 L. Ed. 1155. If the bankruptcy court can, as is here claimed, take exclusive possession of the vessel, it is almost impossible to see how such a suitor in admiralty could be given the only remedy available to him (but see The Resolute, 1897, 168 U.S. 437, 18 S.Ct. 112, 42 L.Ed. 533).

■ Neither the referee in bankruptcy, nor the debtor in possession, nor any persons acting in their behalf, will be permitted to interfere with the marshal's custody of Amiga Mia. Brown is to proceed with his suit in admiralty to enforce his lien, but he is not to issue any venditioni exponas without securing the consent of the court. Any stays directed at Brown by the referee are vacated and set aside.

I suggest that every effort should now be made to avoid complications about wharfage. See The Guatemala, 2 Cir., 1948, 166 F.2d 687.

■ The debtor is apparently in default on the return of process in the admiralty suit. I will open this default. The debtor will have until May 19, 1948, to take such

---

[1] Parenthetically, it may be observed that it is doubtful whether this section authorizes action by the referee, as distinguished from the court, in respect of the granting of stays.

[2] Even though The Robert and Edwin, supra, upholds the possession of the bankruptcy court where it was acquired first, the case certainly suggests that, nevertheless, maritime liens are to be enforced with priorities according to the admiralty law.

steps as she is advised to cure this default, which is understandable under the circumstances.

Submit order to be settled on notice.