**In the Matter of J. S. GISSEL & COMPANY, Debtor.**

No. 64–H–84.

United States District Court
S. D. Texas,
Houston Division.
Feb. 5, 1965.

Vinson, Elkins, Weems & Searls and Robert M. Julian, Houston, Tex., for movant, Bay-Houston Towing Co.

Andrews, Kurth, Campbell & Jones, C. F. Morse, Houston, Tex., for Sydney H. Green, trustee.

Hutcheson, Taliaferro & Hutcheson, Thad Grundy, Houston, Tex., for debtor, J. S. Gissel & Co.

INGRAHAM, District Judge.

These proceedings are before the court on motion of Bay-Houston Towing Company to vacate orders of this court staying the prosecution by Bay-Houston of that certain proceeding in admirality entitled, "Bay-Houston Towing Co. v. Oil Screw SAN PEDRO, her engines, etc. and J. S. Gissel & Company," Admiralty No. 785 in the United States District Court for the Eastern District of Louisiana, Baton Rouge Division.

A hearing was ordered to show cause why the previous order should not be vacated and why an order should not be entered directing that the vessel SAN PEDRO be excluded from the reorganization proceeding and, in the alternative, to require the Trustee to post bond to secure Bay-Houston Towing Company's first preferred mortgage and other claims against the SAN PEDRO.

The parties stipulated the following facts:

(1) The Debtor, J. S. Gissel & Company executed a promissory note on the second day of January, 1963, payable to Bay-Houston Towing Company in the principal amount of $83,103.60, secured by first preferred mortgage upon the vessel SAN PEDRO. Payments on the aforesaid note have been continuously in default from September 1963 to date.

On November 25, 1964, Bay-Houston Towing Company instituted a libel in rem against the Oil Screw SAN PEDRO and in personam against J. S. Gissel & Company, docketed as No. 785 in Admiralty in the United States District Court for the Eastern District of Louisiana, to foreclose the aforesaid preferred mortgage on the M/V SAN PEDRO.

On November 27, 1964, the United States Marshal seized said vessel and took it into his custody pursuant to order of the Admiralty Court in said proceeding.

(2) Petition for Reorganization of J. S. Gissel & Company was filed in this court on December 15, 1964, and on said date this court entered an order staying Bay-Houston Towing Company from prosecuting the aforesaid proceeding in admiralty. By order entered on December 18, 1964, the Petition for Reorganization of J. S. Gissel & Company was approved by this court, said order containing a stay of all proceedings against the Debtor or against the Trustee.

(3) The estimated current appraised value of the Oil Screw SAN PEDRO is approximately Two Hundred Eight Thousand and No/100 Dollars ($208,000.00).

(4) The following insurance is in force with respect to the Oil Screw SAN PEDRO, said insurance being provided by Lloyds of London and British Insurance Companies through C. T. Bowring & Co., Ltd.:

Hull, excluding collision liability— $175,000.00 with a $1,000.00 deductible.

Protection and Indemnity insurance, including collision liability—$175,000.00 with $3,500.00 deductible.

■ The single question for determination at this time is whether a foreclosure proceeding commenced prior to the filing of a petition for reorganization may be stayed by the bankruptcy court, acting through the district judge.

Bay-Houston (hereinafter referred to as the mortgagee) urges that any conflict between the jurisdiction of the Bankruptcy Court and that previously exercised by the admiralty court should be resolved by allowing the admiralty court, which first obtained jurisdiction of the res, to retain that jurisdiction. It is pointed out that although the stay order recites that "Bay-Houston Towing Company will suffer no loss by delaying the continuation of such proceeding * * *," Bay-Houston is suffering the loss of principal and interest on the mortgage indebtedness as well as thirty dollars ($30.00) per day in keepers' fees. Furthermore, the mortgagee alleges that the vessel is leaking, must be pumped several times a day, and may sink unless disposed of promptly.

We shall first consider the legal authority of the district judge to enter the disputed order, and then, due to the disposition of that issue, proceed to a determination of whether the facts are such as to warrant a modification or termination of the order. The mortgagee relies primarily on the case of Parks v. Leaman and Sons, Inc., 279 F.2d 529 (5th Cir. 1960), to support his position. But the mortgagee's interpretation of Leaman is incorrect. The case does not hold that a subsequently filed reorganization proceeding must defer to the prior admiralty foreclosure. It is a case in which the bankruptcy court vacated its own order which had stayed the admiralty proceeding; the admiralty court then proceeded to a conclusion; and final orders of the admiralty court were appealed to the Fifth Circuit. The question of the power of the district court to enter a stay order in cases of this nature was not even considered in Leaman. Nor is In re Martin, 78 F.Supp. 433 (E.D.N.Y.1948), compelling authority for the mortgagee's position. That case specifically held that the court need go no further than to say that there was no justification for an order which transferred custody of a vessel from the marshal, acting under a libel in rem, to the debtor in possession, acting under a Chapter XI proceeding. Furthermore, it was a case where the referee issued the challenged order, as distinguished from the district judge. While the court did address itself to the question of power, it was not concerned with an exercise equivalent to that in the instant case.

And finally, at the show cause hearing, the mortgagee directed the court's attention to Gilmore & Black, Admiralty, Secs. 9–92, at page 656, where it is said, "When a ship has been seized by the Marshal under in rem process before the filing of a petition in bankruptcy, the ship does not come into the control of the bankruptcy court. The action cannot therefore be enjoined and will proceed to final adjudication and a sale of the ship unless the bankruptcy trustee has procured its release under bond." This language seems to support the mortgagee's position, but a careful reading of the statement, in context, explodes its effectiveness. First, the case cited in support of the proposition, The Philomena, 200 F. 859 (D.Mass.1911), preceded Chapters X and XI, the reorganization provisions, by almost thirty years. And, secondly, the difference between bankruptcy and reorganization proceedings is seen clearly two sentences later in the paragraph from which the above quote was taken. The treatise goes on to say: "The powers of a reorganization court to restrain proceedings already instituted when the petition is filed are more extensive than those of the bankruptcy court. Although the issue has not been litigated since 1938 when reorganization procedure was codified as Chapters X and XI of the Bankruptcy Act, there is no reason to doubt that a reorganization court would have power to enjoin a pending in rem action in admiralty."

This is directly contrary to the position taken by the mortgagee. Although not involving an admiralty libel, the principle enunciated in the treatise is clearly applied by this circuit in Mongiello Bros. Coal Corp. v. Houghtaling Properties, Inc., 309 F.2d 925 (5th Cir. 1962). In that case a mortgage on real property was foreclosed and the property was to be sold on a certain date. After the foreclosure, but prior to sale, a reorganization petition was filed and the foreclosure sale was restrained. The mortgagee argued that the stay should not have been entered since the lien of the mortgage attached prior to the bankruptcy petition. The trustee and the court conceded that this is true in an ordinary bankruptcy, but it was pointed out that the rule is different in proceedings for reorganization under Chapter X of the Bankruptcy Act.

The reason for the distinction is not difficult to perceive. A plan of reorganization may affect and modify all of the debtor's debts, both secured and unsecured. Consequently the power to control the actions of secured creditors and proceedings to enforce their claims, as well as all other claimants, is a prerequisite to a successful administration of the proceeding. This different approach in reorganization proceedings finds a solid foundation in the injunction provisions of Chapter X. Express power to issue stays and injunctions is conferred upon the reorganization court. Section 113, upon cause shown, permits the district judge to grant temporary stays (until the petition is approved or dismissed) of proceedings or acts relating to the debtor's property or suits against the debtor itself. Section 116(4) gives the judge authority, *after the approval of the petition*, to enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor. Section 148, in addition, provides that

until otherwise ordered by the judge, an order approving the reorganization petition shall operate automatically as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act or other proceeding to enforce a lien against the debtor's property.

■ It is in Section 113, 11 U.S.C.A., § 513, that this court specifically found the authority to enter the stay preceding the approval of the petition for reorganization. That section provides:

"Prior to the approval of a petition, the judge may upon cause shown grant a temporary stay, until the petition is approved or dismissed, of a prior pending bankruptcy, mortgage foreclosure or equity receivership proceeding and of any act or other proceeding to enforce a lien against a debtor's property, and may upon cause shown enjoin or stay until the petition is approved or dismissed the commencement or continuation of a suit against a debtor."

The language is meant to be all embracing. See House Hearings on H.R. 6439, 75th Cong., 1st Sess. 141 (1937); Senate Hearings on H.R. 8046, 75th Cong., 2d Sess. 78–79 (1937–38). And as such, the statute covers admiralty as well as all other proceedings. The court acted well within its statutory power when it entered the challenged stay.

■ It is true, however, that whether to enter a stay under Section 113 is a discretionary matter with the court and depends largely on the unique facts of the particular case before the court. Foust v. Munson Steamship Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936). And even when the stay operates automatically, as in Section 148 cases, a party can avoid the effect of the restraint by petitioning the court for a modification thereof.* In view of the mortgagee's

* Although the issue was neither raised nor discussed by the litigants, the court feels compelled to observe, if only for purposes of clarity, that the relevant litigation in the Eastern District of Louisiana was automatically stayed by the

allegations concerning the injury resulting to it from the stay and the allegations concerning the possible sinking of the vessel, the court feels it should discuss why the stay order is not being modified.

■■ The purpose of Chapter X is to avoid immediate liquidation of the properties involved in the reorganization of a corporation with a view to rehabilitate rather than liquidate. The stay provisions are weapons toward this end, and in this respect, they relax any rule of comity which might otherwise compel a deference to prior proceedings in other courts. Rehabilitation, of necessity, is dependent upon the use of the corporate equipment —in this instance, the vessel in dispute. Sydney H. Green, Trustee, inspected the SAN PEDRO at Baton Rouge and testified at the show cause hearing that the vessel was in good condition and would be helpful to the operation of the company. He further testified that it could be operated for $600 to $650 per day, while to charter a tug of the same power would cost $1050 per day. So far as the leakage was concerned, his undisputed testimony was that the vessel was not leaking badly and was not in danger of sinking. In no way was the Trustee's testimony controverted. This testimony, establishing the value of continued operation to the debtor and the relation of the vessel to any plans for reorganization, is sufficient to outweigh the considerations in favor of

modifying the original order. Sufficient cause has been shown why the *ex parte* order of this court dated the 15th day of December, 1964, should not be vacated, quashed and set aside and why the vessel should not be excluded from the reorganization proceeding.

■ The alternative requirement, that the Trustee post bond to secure Bay-Houston Towing Company's first preferred mortgage and other claims against the SAN PEDRO, must also be denied. While the movant directs the court to no authority for such a requirement, it is assumed that reliance was placed on Federal Rule 65(c), which compels the giving of a bond for the indemnification of those enjoined. This rule, however, does not apply to an injunction such as that under discussion, for this stay was issued to prevent the impairment of the court's jurisdiction and to assure the enforcement of subsequent orders. Rule 65 contemplates ordinary civil litigation and adversary proceedings, which contemplation is not consistent with corporate reorganization proceedings. 6 Collier, Bankruptcy, 621 (14th ed. 1964).

The motion of Bay-Houston Towing Company to vacate the stay order of December 15, 1964, or in the alternative to require the Trustee to post bond, will be denied. The clerk will notify counsel to draft and submit appropriate order.

---

entry of the order approving the petition for reorganization. Chapter X, Section 148, 11 U.S.C.A. § 548. The language of Section 113 indicates to this court that upon *approval* of the petition for reorganization, a stay entered under Section 113 is no longer effective. But since the language delineating the scope of the stay is the same in both Section 113 and Section 148, *any action stayed* prior to approval of the petition remains restrained after approval of the petition.

It is not the "automatic" stay that is currently under attack, but the *ex parte* stay entered prior to approval. A similar situation existed on appeal in Mongiello Bros. Coal Corp. v. Houghtaling Prop-

erties Inc., 309 F.2d 925 (5th Cir. 1962). Appellant attacked the stay order entered prior to approval of the petition and the Trustee filed a motion to dismiss the appeal on the ground that the question presented became moot when the court approved the petition and the general stay was entered. The court denied the motion as being patently without merit, and proceeded to a consideration of the appeal. It is in view of that ruling that this court has concerned itself only with the earlier stay. But what is herein said about the effectiveness of the stay entered in accordance with Section 113 is equally relevant to the automatic stay of Section 148.