**COASTAL PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**The OIL SCREW "SANTEE" (off. No. 602138), Her Engines, Tackle, Apparel, Equipment, etc., in rem, and G. Norman Kittles and Carolyn D. Kittles, in personam, Defendants.**

**No. CV 285–022.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Aug. 2, 1985.

Richard Rominger, Savannah, Ga., for plaintiff.

Evelyn Johnson, Brunswick, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

Coastal Production Credit Association ("Coastal") brought this action *in rem* against the oil screw "Santee" ("O/S SANTEE") and *in personam* against Norman and Carolyn Kittles to foreclose on a preferred ship mortgage. Before this Court is defendants' motion to stay the foreclosure proceedings, pending adjudication of a Chapter 11 reorganization petition filed in the bankruptcy court of this district. Having read and considered the parties' briefs in support of their respective positions, the Court is of the opinion that the motion to stay should be granted.

## FACTUAL BACKGROUND

Between March 1983 and October 1984, Coastal made the Kittles three loans, totaling more than $70,000, in connection with the defendants' shrimping business. Plaintiffs' Complaint, at 3–6. These loans were secured by a preferred ship mortgage on the O/S SANTEE, her engines, tackle, apparel and other equipment. Plaintiff's Complaint, Ex. 1. When the Kittles failed to make timely payments on the three promissory notes, the loans went into default. Plaintiff's Complaint, at 7. As of February 1, 1985, the outstanding indebtedness on the notes totaled $59,136.64, plus interest which continues to accrue daily. Affidavit in Support of Motion to amend Complaint, at 2–3.

Coastal instituted foreclosure proceedings against the vessel and her owners on February 8, 1985. A warrant for the arrest of the O/S SANTEE was issued, and on February 15, 1985, a United States Marshal attached the vessel at its berth in Valona, Georgia. On February 19, 1985, the Kittles filed a petition for a Chapter 11 reorganization of their shrimping business. The defendants now seek to invoke the automatic stay provisions of the Bankruptcy Code in a last-ditch effort to forestall an interlocutory sale of the O/S SANTEE. Plaintiff opposes the motion on the grounds that this Court, sitting in admiralty, has exclusive jurisdiction over a foreclosure proceeding under the Ship Mortgage Act of 1920, 46 U.S.C. § 911 *et seq.* (1982).

## DISCUSSION

At issue here is whether a court of admiralty or the bankruptcy court should have exclusive jurisdiction over the matter of the O/S SANTEE. Commentators have called the collision of admiralty law with bankruptcy law "a chamber of hypothetical horrors," Gilmore & Black, *The Law of Admiralty* 812 (2d ed. 1975), and this case amply illustrates why.

Title 28 of the United States Code gives the federal district courts original exclusive jurisdiction over "any civil cases of admiralty or maritime jurisdiction." 28 U.S.C. § 1333 (1982). The Ship Mortgage Act of 1920, 46 U.S.C. § 911 *et seq.* (1982), under which this action arose, further provides that the district courts have original exclusive jurisdiction over proceedings to foreclose on preferred ship mortgages. 46 U.S.C. § 951 (1982).

Title 28, however, also vests the district courts with original exclusive jurisdiction over "all cases" arising under the Bankruptcy Code. 28 U.S.C. § 1334(a) (1982) (amended 1984). Section 1334 further provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate." 28 U.S.C. § 1334(d).

Once a bankruptcy petition has been filed and the bankruptcy court has gained jurisdiction over the debtor's property, the automatic stay provisions of the Bankruptcy Code come into play, halting other judicial proceedings against the debtor until his petition has been adjudicated. 11 U.S.C. § 362(a) (1982) (amended 1984). Proceedings to foreclose on a preferred ship mortgage are not one of the enumerated exceptions to the automatic stay imposed by § 362. 11 U.S.C. § 362(b).

The O/S SANTEE was properly brought within the jurisdiction of this Court sitting in admiralty by the initiation of *in rem* foreclosure proceedings and by the attachment of the vessel. However, the bankruptcy court has exclusive jurisdiction over

the debtor's property and estate, of which the O/S SANTEE is a part. The vessel thus appears to be properly within the jurisdiction of both courts. Faced with concurrent jurisdiction by two courts, this Court must now decide which forum is better suited to handle the matter of the O/S SANTEE.

Coastal contends that the doctrine of *custodia legis* requires this Court to retain jurisdiction and proceed with foreclosure. Even if the doctrine of *custodia legis* is not applicable, plaintiff argues that the unique nature of maritime liens and ship mortgages demands the attention of an admiralty court, rather than a bankruptcy court unskilled in the intricacies of maritime law. Finally, plaintiff suggests that the Ship Mortgage Act creates an unenumerated exception to the automatic stay provisions of the Bankruptcy Code. The Court will examine each of these contentions in turn.

■ The doctrine of *custodia legis* is nothing more than a practical "first come, first serve" method of resolving jurisdictional disputes between two courts with concurrent jurisdiction. Under this doctrine, the court that first secures custody of the property administers it. *See, e.g., Moran v. Sturges,* 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981 (1894); *Wong Shing v. M/V Mardina Trader,* 564 F.2d 1183 (5th Cir.1977); *Ciel y Cia S.A. v. Nereide Societa di Navigazione per Azioni,* 1983 A.M.C. 1192 (E.D.Va.1983). Thus, in *Wong Shing,* an admiralty court which had gained *in rem* jurisdiction over the M/V MARDINA TRADER refused to stay its sale of the vessel, despite a temporary restraining order issued by an Illinois bankruptcy judge. And, in *Ciel y Cia,* another admiralty court refused to defer to ongoing bankruptcy proceedings and retained jurisdiction over the subject vessel.

Other courts, however, have concluded that the doctrine of *custodia legis* does not always control, particularly when it clashes head on with the sweeping automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362. *See, e.g., Atlantic Richfield Co. v. Good Hope Refineries, Inc.,* 604 F.2d 865 (5th Cir.1979); *In re J.S. Gissel &*

*Co.,* 238 F.Supp. 130 (S.D.Tex.1965); *United States v. LeBouf Brothers Towing Co.,* 45 B.R. 887 (E.D.La.1985); *Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.,* 38 B.R. 987 (S.D.N.Y.1984). Courts so holding generally have distinguished between petitions for liquidation and petitions for reorganization of an ailing business.

■ In a simple Chapter 7 insolvency proceeding, 11 U.S.C. § 701 *et seq.* (1982) (amended 1984), the goal of the bankruptcy court is to achieve a rapid liquidation and equitable distribution of the debtor's assets among his creditors. *Katchen v. Landry,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Roberts,* 460 F.Supp. 88 (N.D. Ga.1978); *In re DeSoto Crude Oil Purchasing Corp.,* 35 F.Supp. 1 (W.D.La.1940). An admiralty court presiding over an *in rem* foreclosure proceeding likewise is concerned with the expeditious sale of an asset, namely a vessel. Since the admiralty court and the bankruptcy court share consonant goals, the principle of comity embodied in the doctrine of *custodia legis* permits the court that first obtained custody of the asset to supervise its liquidation. *See generally* Gilmore & Black, *The Law of Admiralty,* 807–08 (2d ed. 1975); Landers, *The Shipowner Becomes a Bankrupt,* 39 U.Chi.L.Rev. 490, 509 (1972).

■ A Chapter 11 reorganization petition, 11 U.S.C. § 1101, *et seq.* (1982) (amended 1984), gives rise to fundamental conflicts between the two courts. The bankruptcy court presiding over a reorganization seeks the continuation of the debtor's enterprise and, to that end, must marshal any assets of the business necessary to its rehabilitation. The admiralty court, however, seeks not to marshal assets but to dispose of them, usually by a speedy interlocutory sale of the defendant vessel. Recognizing this inherent conflict, two leading commentators have noted that the powers of a bankruptcy court presiding over a reorganization are necessarily more extensive than those of a court administering a liquidation. *See* Gilmore & Black, *supra,* at 807–08; Landers, *supra,* at 509.

■ Although authorities on point are admittedly sparse, this view has found sup-

port in case law. Upon analyzing the competing policies and priorities of the admiralty and bankruptcy courts, Judge Ingraham in *In re J.S. Gissel & Co., supra*, at 133, wrote:

> A plan of reorganization may affect and modify all of the debtor's debts, both secured and unsecured. Consequently the power to control the actions of secured creditors and proceedings to enforce their claims, as well as all other claimants, is a prerequisite to a successful administration of the proceeding.

The court then refused to vacate its stay of proceedings pending *in rem* foreclosure proceedings, which were instituted against the O/S SAN PEDRO and her owners in another district court just three weeks before a reorganization petition was filed. *Id.* at 134.

The Fifth Circuit Court of Appeals adopted the *Gissel* rationale in *Atlantic Richfield Co. v. Good Hope Refineries, Inc., supra*, at 869, though the court ultimately ruled that a surety bond did not need to be administered by a bankruptcy court because the bond belonged to the surety, rather than the debtor. The most recent case to embrace the *Gissel* approach was *United States v. LeBouf Brothers Towing Co., supra*, decided in 1985. As in the instant case, plaintiff had initiated *in rem* foreclosure proceedings under 46 U.S.C. § 951. Four vessels were arrested and an admiralty court ordered them sold. Before the sale took place, a petition for reorganization was filed in bankruptcy court. Relying on *Atlantic Richfield*, Judge Sear concluded that his order to sell the vessel had to be vacated pending adjudication of the reorganization proceeding. *Id.* at 890–91.

This Court has determined that it likewise should follow *Gissel* and *Atlantic Richfield*. Their reasoning is sound and persuasive, admirably serving the twin causes of judicial economy and debtor relief by consolidating under the jurisdiction of one competent court any assets required for a successful reorganization. Referring pending maritime foreclosures to the bankruptcy court also eliminates fragmentation of actions and thereby allows claims against the debtor to be handled expediently. In addition, Fifth Circuit decisions rendered prior to September 30, 1981, are binding on this Court, absent Eleventh Circuit rulings to the contrary on a given question. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981). No Eleventh Circuit opinions issued to date address the question presented here, so *Atlantic Richfield* remains controlling authority.

Having found that the matter of the O/S SANTEE must be referred to the bankruptcy court, it is unnecessary for this Court to consider whether the Ship Mortgage Act creates an unenumerated exception to the automatic stay provisions of the Bankruptcy Code. That question, as well as any request to lift the stay and allow sale of the O/S SANTEE, is best left to the bankruptcy court for resolution.

CONCLUSION

Because the Court shares concurrent jurisdiction over the O/S SANTEE with the bankruptcy court for this district and because the bankruptcy court is better equipped to resolve disputes between debtors and creditors through its reorganization procedures, defendants' motion to stay *in rem* foreclosure proceedings against the vessel and her owners should be and hereby is GRANTED.